Merrimack County Probate Court
No. 2000-592

## IN RE GUARDIANSHIP OF BRITTANY S.

Argued: November 14, 2001
Opinion Issued: March 11, 2002

*Disabilities Rights Center, Inc.*, of Concord (*Christina Deslauriers Ghio* and *Ronald K. Lospennato* on the brief, and *Ms. Ghio* orally), for the petitioner.

*Philip T. McLaughlin,* attorney general (*Mary E. Schwarzer,* assistant attorney general, on the brief and orally), for the State, as *amicus curiae.*

BRODERICK, J. The petitioner, Tammy G., appeals from the decision of the Merrimack County Probate Court (*O'Neill,* J.) denying her request for appointment of counsel in her petition to terminate a guardianship over her daughter, Brittany S., and an associated motion for contempt or to compel. We affirm.

The parties agree to the following facts. Pursuant to a guardianship order of the probate court, Brittany S. was placed in the custody of Richard and Susan S. in November 1997. Thereafter, Tammy G. sought treatment for her bi-polar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. In April 2000, Tammy G. petitioned to terminate the guardianship. Upon motion of the guardians, the probate court ordered Tammy G. to produce records concerning Aid to the Permanently and Totally Disabled (APTD), Social Security Income (SSI) and health care. In June, because Tammy G. had not yet complied with the court's order, the guardians filed a motion for contempt or, alternatively, to compel production. Tammy G., in turn, filed a motion for appointment of counsel, which the probate court denied following a hearing in July.

On appeal, Tammy G. argues that the probate court's order denying her counsel was erroneous because it: (1) violated her due process rights under the United States and New Hampshire Constitutions; (2) failed to consider the proper factors of the due process analysis, as enumerated in *Mathews v. Eldridge,* 424 U.S. 319 (1976); and (3) failed to address her request under the probate court's discretionary authority.

At the outset, we note the State's contention that we should dismiss the present appeal for lack of jurisdiction. Specifically, the State argues that the probate court's denial of the petitioner's motion for appointed counsel is not a final judgment on the merits, and, therefore, is not ripe for review. The State also contends that any claimed due process right to appointed counsel is so enmeshed with the factual and legal issues of the underlying cause of action that it cannot be viewed as a separate issue and is, therefore, not immediately appealable under the collateral order doctrine. We need not address the collateral order doctrine here as our jurisdiction to decide the due process issue on interlocutory appeal is clear. We waive the procedural requirements of Supreme Court Rule 8 and consider the appeal as having been properly filed. *See* SUP. CT. R. 1.

The petitioner grounds her due process claim to appointed counsel on the Fourteenth Amendment to the United States Constitution and Part I,

Article 2 of the New Hampshire Constitution. We first address her claim under the State Constitution. *State v. Ball,* 124 N.H. 226, 231 (1983).

█ The right to raise and care for one's children is a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution. Because the State Constitution is at least as protective of individual liberties as the Federal Constitution, we need not conduct a separate federal inquiry. *See Petition of Kerry D.,* 144 N.H. 146, 149 (1999). Accordingly, we rely upon our State Constitution and cite federal opinions for guidance only. *Ball,* 124 N.H. at 232-33; *see In re Baby K.,* 143 N.H. 201, 203-04 (1998).

█ This court is the final arbiter of the due process requirements of the State Constitution. *In re Baby K.,* 143 N.H. at 204. To determine whether the State Constitution mandates the appointment of counsel in this case, we employ a three-prong balancing test. We consider: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, considering the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *See id.* at 205; *see also Mathews v. Eldridge,* 424 U.S. at 335.

The petitioner argues that the right to the care, custody and control of her child is a fundamental liberty interest protected by the State Constitution. We agree. *See Petition of Kerry D.,* 144 N.H. at 149. In recognition of this interest, an indigent parent faced with a termination of parental rights proceeding is entitled to court-appointed counsel by statute. *See* RSA 170-C:10 (1994). Likewise, the right to court-appointed counsel is also recognized for abuse and neglect proceedings. *See* RSA 169-C:10, II(a) (Supp. 2001) (providing for court-appointed counsel to represent an indigent parent alleged to have neglected or abused that parent's child).

The fundamental nature of a parent's liberty interest, which has been long recognized in termination of parental rights and abuse and neglect proceedings, is less substantial in a proceeding to terminate a guardianship. Here, Tammy G.'s parental rights to the care, custody and control of her daughter were already curtailed during the initial guardianship proceeding. A subsequent proceeding to terminate a previously ordered guardianship imposes no increased risk of further deprivation of parental rights. *See* RSA 463:15 (Supp. 2001) (termination of guardianship). Accordingly, the private interest at stake is less than that

at issue in an initial guardianship proceeding. The private interest associated with the possible return of parental rights is not a mirror image of the private interest involved with the initial loss of those rights.

The guardianship before us has a finite life and is subject to periodic review by the probate court. *See id.* Unlike the termination of parental rights, a guardianship may be ended or modified and the parental ties are not permanently severed. *See In re Jessie E.*, 137 N.H. 336, 339-40 (1993). Pursuant to RSA 463:15, IV, "[a]ny minor under guardianship ... who is 14 years of age or older, or any person interested in the welfare of the minor, may petition for the termination of the guardianship." RSA 463:16 (Supp. 2001) provides that the probate court may "from time to time, upon application of any person interested in the welfare of the minor ... revise or alter any prior orders or make [a] new [guardianship] order." Where the department of health and human services provides services to a minor under guardianship, the probate court must review the guardianship at least annually. *See* RSA 463:17 (Supp. 2001).

The petitioner asserts that appointed counsel is mandated to protect her interest in keeping her medical records confidential. She argues that the disclosure of her therapy records could negatively affect the therapeutic relationship between her and her counselor and that without the assistance of counsel, she "is in the untenable position of disclosing all of her [medical] records or abandoning her request to have her daughter returned to her custody." We disagree. The petitioner may renew her request for the probate court to conduct an *in camera* review of any or all records which the petitioner has not released. Moreover, any interest Tammy G. has in keeping her medical records confidential is completely eclipsed by the State's interest in determining if "substitution or supplementation of parental care and supervision is no longer necessary to provide for the essential physical and safety needs of [Brittany S.] and termination of the guardianship will not adversely affect [her] psychological well-being." RSA 463:15, V. On balance, Tammy G.'s interest in keeping her medical records confidential does not mandate the appointment of counsel.

We next examine the risk of an erroneous deprivation of Tammy G.'s interest in the potential return of parental rights as a result of the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. The petitioner contends that the risk of an "erroneous deprivation of the parent-child relationship and the right to private and confidential medical records is tremendous." She argues that the proceedings in both the termination of guardianship and the motion relating to the production of her medical records will be particularly complex, involving the scope of doctor-patient privilege, *in camera* review

and redaction, testimony and cross-examination of expert witnesses, rules of discovery and substantive due process rights. Further, she argues that the lack of court-appointed counsel will make it "impossible for the court to reach a fair and accurate determination."

We disagree that there is an appreciable risk of an erroneous deprivation of the parent-child relationship at stake. As noted, Tammy G. has already been deprived of this relationship as a consequence of the initial guardianship proceeding. The private interest at issue here is the possible return of Tammy G.'s parental rights. The risk that Tammy G. may not prevail in the proceedings is tempered by the fact that, in any hearing regarding the guardianship of minors, the probate court is not bound by the technical rules of evidence and may admit evidence which it considers relevant and material. RSA 463:8, I (Supp. 2001). Further, proceedings are held before the probate judge without a jury and in a closed court. *See* RSA 463:9, I (Supp. 2001); 10 C. DEGRANDPRE, NEW HAMPSHIRE PRACTICE, PROBATE LAW AND PROCEDURE § 11-2, at 104 (3d ed. 2001).

■ Finally, we examine the government's interest, including the function involved and the fiscal and administrative burdens that the provision of court-appointed counsel would entail. The State, in its role as *parens patriae*, has a significant interest in protecting the best interest of Brittany S. *See In re Baby K.*, 143 N.H. at 206. The petitioner argues that the fiscal and administrative burden associated with court-appointed counsel is "minimal" because "it entails only the appointment of an attorney from a contract attorney appointment system already in place." While it may be true that the appointment of counsel in a single case would entail a relatively minor fiscal and administrative burden, it would be decidedly shortsighted to limit our review to this case only. Given that RSA 463:15, IV provides that "any person interested in the welfare of the minor, may petition for the termination of the guardianship of the person," we are mindful that the volume of demand for representation by indigent parents, and the costs associated with that representation could be significant. Thus, based upon our analysis of the three-prong balancing test, we hold that the State Constitution does not require that counsel be appointed to represent Tammy G.

The petitioner further contends that the probate court abused its discretion by failing to consider the three-prong balancing test of *Mathews v. Eldridge*, 424 U.S. at 335. Because of our own consideration of the *Mathews v. Eldridge* balancing test and consequent conclusion that the State Constitution does not require that counsel be appointed to represent Tammy G. in this termination of a guardianship and contempt proceeding,

we need not decide this issue. *See In re Baby K.*, 143 N.H. at 204 (review of the State Constitution's due process requirements is *de novo*). We note, however, that the probate court both cited *Mathews v. Eldridge* and correctly recited the elements of the balancing test. The probate court also compared the private interest at issue in *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), relied upon by the petitioner in her motion to appoint counsel, with the petitioner's private interest at issue here. While the probate court did not elaborate upon its balancing test analysis, it obviously applied the proper test and we cannot say that its conclusions reflect an unsustainable exercise of discretion. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

■ Finally, the petitioner argues that the probate court failed to consider her request for appointed counsel under the court's discretionary authority. We disagree. Under our "unsustainable exercise of discretion" standard, the petitioner must demonstrate that the probate court's ruling was "clearly untenable or unreasonable to the prejudice of [her] case." *Id.* The petitioner relied upon *Duval v. Duval*, 114 N.H. 422 (1974), and *Sheedy v. Merrimack County Superior Court*, 128 N.H. 51 (1986), to support her argument that due process may require counsel in civil contempt proceedings dependent upon the complexity of the issues involved. The record reveals that the probate judge specifically queried the petitioner's counsel about both cases before deliberating on the matter. *Cf. DeButts v. LaRoche*, 142 N.H. 845, 847 (1998) (record failed to indicate that court exercised its discretion). The fact that the court did not exercise its discretion in favor of the petitioner does not compel a finding that the court failed to exercise its discretion. We find that the petitioner has failed to meet her burden regarding an unsustainable exercise of discretion.

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.