Hillsborough-southern judicial district
No. 2000-425

## IN RE SHELBY R.

Argued: February 7, 2002
Opinion Issued: August 20, 2002

*Paula J. Werme,* of Boscawen, by brief and orally, for Mark H.

*Philip T. McLaughlin,* attorney general (*Laura E. B. Lombardi,* attorney, on the brief and orally), for the State.

NADEAU, J. Mark H., Shelby R.'s stepfather, appeals from a proceeding under the Child Protection Act. *See* RSA ch. 169-C (2002). He argues that by prohibiting the court from appointing counsel for indigent stepparents in abuse or neglect proceedings, RSA 169-C:10, II(a) violates the Due Process Clauses of both the State and Federal Constitutions. We agree on State constitutional grounds.

In February 1999, the division for children, youth and families (DCYF) filed a petition in Jaffrey-Peterborough District Court alleging that Mark H. had abused Shelby R. After a preliminary hearing, the court ordered Mark H. not to reside in the house or have any contact "whatsoever" with Shelby R. Following an adjudicatory hearing in August 1999, the district court found that "Shelby was abused by Mark H. by means of hitting her and having her commit oral sex on him." The district court again ordered Mark H. to have "no contact whatsoever with Shelby."

Mark H. then exercised his statutory right to a *de novo* review in superior court. *See* RSA 169-C:28. In superior court, he filed a "Motion For Appointment of Paula Werme As Counsel." Attorney Werme had, in fact, represented Mark H. at the district court proceedings. The motion was accompanied by a financial affidavit. The Superior Court (*Dalianis,* J.) denied the motion, holding that RSA 169-C:10 does not authorize appointment of counsel for Mark H. The superior court then held an adjudicatory hearing. At the hearing, Mark H. was represented by Attorney Werme. Following the hearing, the superior court found that Mark H. had sexually abused Shelby R.

In his notice of appeal, Mark H. raises four issues. We bifurcated the issues and ordered the parties to proceed on only one – whether RSA 169-C:10, II(a) is unconstitutional because it "prohibits the appointment of an attorney to a step-parent accused of abusing a child, by denying him equal access to due process to clear his name and protect his family integrity."

The Child Protection Act requires the court to appoint counsel to represent an indigent parent who has been accused of abusing or neglecting his or her own child. RSA 169-C:10, II(a). The statute also states that the court "may appoint" counsel for an indigent parent not accused of abuse or neglect "if the parent is a household member and such independent legal representation is necessary to protect the parent's interests." *Id.* "Parent" is defined to include "mother, father, [and] adoptive parent." RSA 169-C:3, XXI. RSA 169-C:10, II(a), however, specifically provides that "[t]he court shall not appoint an attorney to represent any other persons involved in a case brought under this chapter."

Analysis of the due process claim requires us to first determine whether a stepparent has a legally protected interest and, if so, to then decide whether the Due Process Clause may require the appointment of counsel as an appropriate procedural safeguard to protect that interest. *Petition of Preisendorfer*, 143 N.H. 50, 52 (1998). We first address this issue under the State Constitution. *See State v. Ball*, 124 N.H. 226, 232 (1983). The due process requirements of Part I, Article 15 of the New Hampshire Constitution are at least as protective of individual liberties as the Fourteenth Amendment of the United States Constitution, *see, e.g., In re Tracy M.*, 137 N.H. 119, 122 (1993), and therefore we need not conduct a separate due process analysis under the Federal Constitution. *Ball*, 124 N.H. at 237.

We agree with Mark H. that accused stepparents have a legally protected interest at stake in abuse and neglect hearings. We believe that familial relationships, aside from biological bonds, stem "from the emotional attachments that derive from the intimacy of daily association," and from the manner in which such relationships promote family life. *Lehr v. Robertson*, 463 U.S. 248, 261 (1983). Of course, a natural parent's role in the family life is a fundamental liberty interest under Part I, Article 2 of the State Constitution. *See Stanley D. v. Deborah D.*, 124 N.H. 138, 142 (1983).

■ Determining that a stepparent has abused or neglected a stepchild can affect the stepparent's marriage, family relationships and family life as a whole. For instance, the court, as a result of a finding of abuse and neglect, may order a household member to stay away from the family home, where, as here, his natural child may also reside. *See* RSA 169-C:19, II(a). Because abuse and neglect proceedings can harm, and in some cases irreparably damage, family and marital relationships, stepparents accused of abuse and neglect have a legally protected liberty interest in preserving

the family life and protecting the sanctity of the familial relationships born within the household.

A person accused of abusing or neglecting a child has another legally protected interest. If a person is found to have abused a child, his or her name will be entered as part of a "founded report" in a central registry maintained by DCYF. *See* RSA 169-C:35. We have previously held that the entry of such a finding in the central registry implicates a liberty interest within the meaning of Part I, Article 15 of the New Hampshire Constitution. *Petition of Bagley*, 128 N.H. 275, 285 (1986). Although we recognize that the entry of Mark H.'s name in the central registry triggered a liberty interest, we proceed with our analysis based only upon his interest in protecting his familial role and relationships "because it is significant and his other interest is no greater." *Petition of Preisendorfer*, 143 N.H. at 53.

Whether the Due Process Clause requires court-appointed counsel for an indigent stepparent to protect his or her liberty interests is determined by balancing three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *In re Richard A.*, 146 N.H. 295, 298 (2001).

The private interests which may be affected in abuse and neglect proceedings are substantial. They include the stepparent-stepchild relationship, the marital relationship, the natural parent-child relationship, and the overall relationship and role that the stepparent plays in the family. As mentioned above, the court can order a stepparent to leave the family home and have no contact with the abused child and any other child in the house, including a natural child. RSA 169-C:19, II(a). Such an order, in and of itself, can have dramatic consequences upon the stepparent's marriage and relations with other family members. In reality, an abuse and neglect proceeding, by its very nature, often tears a family apart and may seriously undermine any chance at rebuilding a healthy family environment.

We next examine the risk that a stepparent will be erroneously deprived of liberty interests through the procedures used, and the value of court-appointed counsel as an additional safeguard. The risk of erroneous deprivation is lessened by RSA 169-C:12, which provides that in hearings under RSA chapter 169, the court is not constrained by technical rules of

evidence, but rather, "may admit any evidence which it considers relevant and material." *Cf. In re Brittany S.*, 147 N.H. 489, 493 (2002). On the other hand, the risk of error is made more appreciable by the relatively low "preponderance of the evidence" standard mandated by RSA 169-C:13. In addition, as in the termination of parental rights proceedings at issue in *Lassiter v. Department of Social Services*, 452 U.S. 18, 30 (1981), "[e]xpert medical and psychiatric testimony, which few parents [or stepparents] are equipped to understand and fewer still to confute, is sometimes presented" in abuse and neglect proceedings. *Cf. In re Gina D.*, 138 N.H. 697, 704-05 (1994). Finally, we note that while parents are protected from having their testimony in abuse and neglect proceedings used against them in a criminal trial, stepparents are not. *See* RSA 169-C:12-a. The advice of an attorney may therefore prove invaluable to a stepparent whose uncounselled testimony may tend to incriminate him. *Cf. Lassiter*, 452 U.S. at 27 n.3. We conclude that the risk of erroneous deprivation weighs in favor of providing counsel to a stepparent against whom an abuse and neglect petition is filed.

Finally, we examine the government's interest, including the function involved and the fiscal and administrative burdens that the provision of court-appointed counsel would entail. The purpose of the Child Protection Act is "to provide protection to children whose life, health or welfare is endangered and to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I. We identify two important State interests advanced by the Act: (1) protecting children; and (2) protecting the rights of all parties involved in abuse or neglect proceedings.

Although we believe the Act's primary interest is protecting children, which often trumps other competing goals of the Act, *see In re Tracy M.*, 137 N.H. at 124, the State's interest in protecting the rights of all parties should not be minimized to the point of abstraction. Indeed, RSA chapter 169-C is to be liberally construed "[t]o provide effective judicial procedures through which the provisions of [RSA chapter 169-C] are executed and enforced and which recognize and enforce the constitutional and other rights of the parties and assures them a fair hearing." RSA 169-C:2, II(c). The State's interest in providing all parties a fair hearing, although not the primary goal of the Act, favors appointing counsel for stepparents.

We briefly consider the burdens that the additional or substitute procedural requirement would entail. Providing court-appointed counsel for stepparents would result in added fiscal as well as administrative burdens upon the State. *Cf. In re Brittany S.*, 147 N.H. at 493. The State's

pecuniary interests are legitimate; however, they are not so significant as to completely outweigh the private interests at stake. *See Lassiter*, 452 U.S. at 28.

In sum, although the State seeks primarily to protect the welfare of children and to handle abuse and neglect petitions efficiently and economically, it recognizes as well its purpose to "establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I; *see also* RSA 169-C:2, II(c). The legislature has determined that indigent natural and adoptive parents shall be provided counsel but has not provided that protection to stepparents. As stepparents have a significant private interest in preserving and protecting family life, we conclude they are entitled to protection under Part I, Article 15 of the State Constitution. Our view is consistent with the fact that stepparents are a commonplace presence in the nuclear family and that "[t]he New Hampshire Legislature and Judiciary have consistently expanded the rights and duties of stepparents." *Bodwell v. Brooks*, 141 N.H. 508, 512-13 (1996). Additionally, stepparents who demonstrate a full commitment to raising and caring for their stepchildren are generally charged with the rights and duties attributed to natural parents. *See id.* at 513.

Finally, we do not believe that the Federal Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000), is at odds with our present holding. In *Troxel*, the court considered how the liberty interests of a parent might be affected by a Washington statute that allowed "'any person' to petition a superior court for visitation rights 'at any time' and authorize[d] that court to grant such visitation rights whenever 'visitation may serve the best interest of the child.'" *Id.* at 60. In invalidating the statute, the court again recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children" and determined that the "decisional framework employed by the superior court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69.

Our present holding is quite a different matter. In determining that stepparents are entitled to certain due process rights, we are not required to choose between the liberty interests of natural or adoptive parents and those of stepparents. Finding that due process under our State Constitution requires the appointment of counsel to stepparents accused of abuse or neglect neither erodes the fundamental rights of natural or adoptive parents, nor imbues stepparents with the same fundamental liberty interest in a child as natural or adoptive parents. Instead, we merely recognize that stepparents, like natural or adoptive parents, are susceptible to charges of abuse or neglect.

■ We conclude that due process requires the appointment of counsel to a stepparent accused of abuse or neglect under RSA chapter 169-C. Because RSA 169-C:10, II(a) not only fails to provide for, but rather prohibits the appointment of counsel for the accused stepparent, the statute is inconsistent with the requirements of due process.

*Reversed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J. concurred; DUGGAN, J., concurred in part and dissented in part.

DUGGAN, J., concurring in part and dissenting in part. The plurality opinion reaches two conclusions: First, RSA 169-C:10, II(a) (2002) violates due process by prohibiting under any circumstances court-appointed counsel for an indigent stepparent accused of abusing or neglecting his or her stepchild; and second, the Due Process Clause in Part I, Article 15 of the New Hampshire Constitution requires court-appointed counsel in every case charging an indigent stepparent with abusing or neglecting his or her stepchild. I agree with the first conclusion but respectfully dissent from the second.

The second conclusion is unsupported by any state or federal cases, inconsistent with settled due process analysis and at odds with our recent decision in *In re Brittany S.*, 147 N.H. 489 (2002).

In *Brittany S.*, we held that due process does not require court-appointed counsel for an indigent mother who seeks to regain custody of her own daughter by terminating a guardianship. *Id.* at 494. We held that even though the mother's interest is fundamental, when that interest is balanced against the safeguards in the guardianship proceedings, the State's interest in protecting children and the significant costs of indigent representation, due process does not require the appointment of counsel. *Id.* at 491-94. The factors involved in an abuse and neglect proceeding against a stepparent – the private interests, the nature of the proceedings and the State's interest – are indistinguishable from those in *Brittany S.* The outcome of this case is thus dictated by *Brittany S.*

The Child Protection Act provides court-appointed counsel to an indigent parent who has been accused of abusing or neglecting his or her own child. RSA 169-C:10, II(a). The statute also allows a court to appoint counsel for an indigent parent not accused of abuse or neglect "if the parent is a household member and such independent legal representation is necessary to protect the parent's interests." *Id.* "Parent" is defined to include "mother, father, [and] adoptive parent." RSA 169-C:3, XXI (2002). RSA 169-C:10, II(a), however, states that "[t]he court shall not appoint an

attorney to represent any other persons involved in a case brought under this chapter." This blanket prohibition strips a court of the authority to appoint counsel to represent an indigent stepparent in an abuse and neglect proceeding under any circumstances.

The threshold step in a due process analysis is to determine whether a stepfather has a legally protected interest. *See Petition of Preisendorfer,* 143 N.H. 50, 52 (1998). We then balance three factors to decide whether appointment of counsel is required to protect that interest. *See In re Richard A.,* 146 N.H. 295, 298-300 (2001).

Mark H. has a legally protected interest in the abuse and neglect hearing. A finding that he has abused or neglected his stepchild can affect his marriage and his family. *See* RSA 169-C:19, II(a)(1) (2002) (court may order a household member to stay away from the premises where the child lives). In this case, such an order affected Mark H.'s relationship with his wife and natural child as well as his relationship with his stepchild. A parent's role in family life is a fundamental liberty interest under Part I, Article 2 of the State Constitution. *See Stanley D. v. Deborah D.,* 124 N.H. 138, 142 (1983); *see also Moore v. East Cleveland,* 431 U.S. 494, 499 (1977) (recognizing freedom of personal choice in matters concerning marriage and family life protected by Fourteenth Amendment); *Troxel v. Granville,* 530 U.S. 57, 65-66 (2000) (reaffirming "the fundamental right of parents to make decisions concerning the care, custody, and control of their children").

Mark H. has another legally protected interest. A finding that he has abused his stepchild will result in his name being entered as a "founded report" in a central registry maintained by the division for children, youth and families (DCYF). *See* RSA 169-C:35 (2002). In *Petition of Bagley,* 128 N.H. 275, 285 (1986), we held that the entry of such a finding in the central registry implicates a liberty interest within the meaning of Part I, Article 15 of the New Hampshire Constitution.

To decide whether the Due Process Clause requires court-appointed counsel for every indigent stepparent who is accused of abusing or neglecting his or her stepchild, we balance three factors: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures used; and (3) the State's interest. *In re Richard A.,* 146 N.H. at 298; *see also Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The private interests that may be affected are substantial. The most significant of these is that the court may order a stepparent to stay away from the home where his or her spouse and natural children reside. *See Lassiter v. Department of Social Services,* 452 U.S. 18, 27 (1981) ("a parent's desire for and right to the companionship, care, custody, and

management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection" (quotation omitted)); *see also Moore*, 431 U.S. at 499. While the order may also affect the stepparent's relationship with his or her stepchild, this interest is not entitled to the same weight as the relationship with his or her natural children. *Cf. Troxel*, 530 U.S. at 69-70 (protecting natural parent's fundamental constitutional right to make decisions concerning rearing of children over grandparents' interest in visiting their grandchildren). The stepparent's relationship with the stepchild may be a strong emotional attachment, but it has not been recognized as a constitutional interest on a par with the natural parent-child relationship. Indeed, if an emotional attachment is determinative, there is no principled basis for distinguishing stepparents from grandparents, siblings and other live-in relatives.

Equating the interests of natural parents and stepparents raises serious constitutional concerns. In *Troxel*, the Supreme Court held unconstitutional a state statute that allowed "any person" to petition for visitation with a child. *Troxel*, 530 U.S. at 73. *Troxel* recognizes the primary role of natural parents in making decisions concerning care, custody and control of their children and, implicitly, the secondary role of others such as grandparents. *Id.* at 65-66; *but cf. Stanley D.*, 124 N.H. at 142 (applying best interest of child standard in divorce proceeding to award physical custody to stepfather over request of natural mother). Thus, to the extent that the plurality's due process analysis elevates a stepparent's interest in his or her relationship with a stepchild to mirror the interest that the constitution recognizes a natural parent has in the care, custody and control of his or her natural child, the analysis is inconsistent with *Troxel*.

While I agree that the private interests at stake here weigh in favor of providing counsel, it is primarily because these proceedings can affect Mark H.'s interest in the care, custody and control of his natural children and his relationship with his wife.

The second factor is the risk that a stepparent's liberty interests will be erroneously deprived through the procedures used and the value of court-appointed counsel as an additional safeguard. Mark H. argues that without an attorney, his inability to present a "technical and complicated defense raised a strong possibility of an erroneous deprivation [of his liberty interests]." Proceedings under the Child Protection Act primarily focus on determining the truth of factual allegations, and whether those allegations, if true, result in a finding that the child was abused or neglected. In resolving this fact-intensive inquiry, the court does not apply the rules of evidence, but may admit any evidence that it considers relevant and

material. *See* RSA 169-C:12 (2002). Although cases involving allegations of child abuse may raise issues of whether a child can reliably recall events, the technical rules of evidence governing admissibility do not apply. Thus, an accused stepparent is permitted to present his case and challenge the State's case unburdened by difficult questions of evidentiary law. *See id.* Further, the proceedings are held in a closed court before a judge without a jury. *See* RSA 169-C:14, :18 (2002). This allows an accused stepparent to present his case free from the distraction created by members of the public and the complications of a jury trial. These procedures are virtually identical to the procedures in *Brittany S. See In re Brittany S.*, 147 N.H. at 492-93.

The plurality points out that, unlike natural parents, stepparents are not statutorily protected from having their testimony in the abuse and neglect proceeding used against them at a subsequent criminal trial and argues that having a lawyer at the abuse and neglect proceeding would provide this protection to stepparents. While true, this is irrelevant. The relevant inquiry here is not whether the presence of counsel will better protect a stepparent's rights in subsequent criminal proceedings but whether the absence of counsel impermissibly increases the risk of an erroneous result in the abuse and neglect proceeding.

The third factor is the government's interest. The purpose of the Child Protection Act is "to provide protection to children whose life, health or welfare is endangered and to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2 (2002). Thus, the State has an interest in a proceeding that produces reliable results, while its duty as *parens patriae* requires that it represent the safety interest of the child. *See In re Tracy M.*, 137 N.H. 119, 124 (1993). The State's interest in providing protection to children is paramount, and any interest stepparents have in their familial relations must yield to the welfare of the children involved. *See id.*

The State has a further interest in adjudicating child abuse or neglect cases as economically as possible. A large number of abuse and neglect proceedings involve allegations that a stepparent has abused a stepchild. Providing court-appointed counsel for all stepparents would result in a significant additional fiscal as well as administrative burden upon the State. *Cf. In re Brittany S.*, 147 N.H. at 493 (noting that while appointment of counsel in a single case may entail relatively minor fiscal and administrative burden, appointment for all such cases upon demand could result in significant costs).

As the United States Supreme Court has recognized, due process does not require appointed counsel in every case where a fundamental liberty interest is at stake. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973);

*Lassiter*, 452 U.S. at 31-32. Rather, in abuse and neglect proceedings, as in the guardianship proceedings in *Brittany S.*, while the first factor may favor the appointment of counsel, the other two factors weigh heavily against providing counsel in every case. *See Gagnon*, 411 U.S. at 790. Thus, I would conclude that court-appointed counsel is not required in every case where an indigent stepparent is accused of abusing or neglecting his or her stepchild.

Neither Mark H. nor the plurality cite a single state or federal court decision that has held that due process requires the appointment of counsel for a stepparent accused of abuse or neglect of his or her stepchild. While many state courts have concluded that due process requires counsel for a natural parent who risks losing custody of his or her child, *see, e.g., Danforth v. State Department of Health & Welfare*, 303 A.2d 794 (Me. 1973), *implicitly overruled by Lassiter*, 452 U.S. at 27 (federal constitutional grounds overruled in part by *Lassiter*), the United States Supreme Court has held that not even a natural parent has a due process right to counsel at a termination of parental rights hearing, *Lassiter*, 452 U.S. at 27.

Moreover, the implications of the plurality opinion may have a significant impact upon other cases. If due process requires court-appointed counsel whenever a stepparent is accused of abusing or neglecting his or her stepchild, then due process certainly requires court-appointed counsel whenever a natural parent may lose custody of a child. For example, when a court finds that a person has abused the parent of his or her minor children under RSA chapter 173-B (2002), it may award custody of the children to the other parent or the department of health and human services. *See* RSA 173-B:5, I(b)(5), (6). Such an order may remain in effect for up to one year. *See* RSA 173-B:5, VI. Hearings under RSA chapter 173-B, like hearings under RSA chapter 169-C, are informal. The rules of evidence are not applied, RSA 173-B:3, VIII, and the primary focus of the inquiry is determining the truth of factual allegations, *see* RSA 173-B:1, I. Further, conduct alleged under RSA 173-B:1, I, must involve the commission or attempted commission of one or more of the enumerated criminal acts. Like an accused stepparent under RSA chapter 169-C, an accused parent's testimony in proceedings under RSA chapter 173-B may be later used against him or her at a subsequent criminal proceeding. Given the similar interests and proceedings involved, it is difficult to see why, under the plurality's reasoning, due process would not require court-appointed counsel whenever an indigent parent is accused of abuse under RSA chapter 173-B.

The real problem with RSA 169-C:10, II(a) is that it prohibits a court from appointing counsel for the accused stepparent, even if the facts and

248

circumstances of a particular case require appointment of counsel to adequately protect a stepparent's right to due process. By prohibiting a court from weighing Mark H.'s fundamental liberty interest in his relationship with his wife and natural child against the State's interest, and evaluating whether appointed counsel is required to adequately reduce the risk that his interest will be erroneously deprived, RSA 169-C:10, II(a) is inconsistent with due process. *See Gagnon*, 411 U.S. at 790; *Lassiter*, 452 U.S. at 30-32. Therefore, RSA 169-C:10, II(a) cannot be applied automatically in cases where, as here, a fundamental liberty interest is at stake. The court, instead, must determine in each case whether the stepparent has a fundamental interest at stake that coupled with a particularly complicated proceeding requires appointed counsel to adequately reduce the risk of erroneous deprivation. *See Lassiter*, 452 U.S. at 31. It bears repeating that the fundamental liberty interest in this case is Mark H.'s interest in the care, custody and control of his natural child and his relationship with his wife. The fact that a finding of abuse will result in his name being entered into the central DCYF registry implicates a liberty interest that is significant but not fundamental.

Finally, the plurality's ruling that due process requires the appointment of counsel for this stepparent does not decide the issue for all future cases because a decision by a plurality of an appellate court has no precedential value. *United States v. Miller*, 255 F.3d 1282, 1288 n. 4 (11th Cir. 2001) (plurality opinion from United States Supreme Court not binding precedent); *Williams v. W.C.A.B. (Green Const. Co.)*, 687 A.2d 428, 430 n. 2 (Pa. Commw. Ct. 1997) (plurality decision of state supreme court not binding precedent); *see also Texas v. Brown*, 460 U.S. 730, 737 (1983) (opinion of Rehnquist, J.).