Hillsborough-southern judicial district
No. 2006-360

## IN RE FATHER 2006-360

Argued: November 14, 2006
Opinion Issued: March 16, 2007

*Kelly A. Ayotte*, attorney general (*Glenn A. Perlow*, attorney, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

*Paula J. Werme*, of Boscawen, by brief and orally, for the father.

*Carolyn M. Kirby*, of Goffstown, by brief, for Hillsborough County.

HICKS, J. The father, P.S., appeals decisions of the Superior Court (*Brennan*, J.) denying his requests for appointment of counsel in abuse and neglect proceedings under RSA chapter 169-C (2002 & Supp. 2006) involving his daughter. We affirm.

The following facts appear in the record. P.S.' daughter, E.S., was born in 1990 and lived with her mother. E.S. has never lived with her father, who resides in Pennsylvania. P.S. unsuccessfully sought custody of his daughter in 1992 and 1995 in the superior court.

In February 2005, the police placed E.S. in protective custody due to allegations that her mother was abusive and/or neglectful. The New

Hampshire Division for Children, Youth and Families (DCYF) filed a petition for abuse and neglect pursuant to RSA 169-C:3, XIX(b) (2002). P.S. was not named in the petition. The Milford District Court held a preliminary hearing and issued an order on February 17, 2005, finding that E.S. was neglected by her mother and awarding DCYF legal custody. Although P.S. was informed of the hearing by telephone, he did not attend. As part of the order, the court "denied until further hearing" P.S.' visitation with his daughter.

An adjudicatory hearing was held on March 10, 2005. P.S. attended the hearing *pro se*. The court again found that E.S. was a neglected child and awarded legal custody to DCYF. P.S. was given visitation rights conditioned upon the discretion of DCYF in consultation with the guardian ad litem. This arrangement was continued by the court at a dispositional hearing held in April 2005, which P.S. attended *pro se*.

On May 19, 2005, Hillsborough County (County) sent P.S. a copy of its motion requesting that the court order him to complete a financial affidavit for purposes of determining the reimbursement he owed to the County and the State pursuant to RSA 169-C:27 (2002). Section V of the statute charges the County with collecting reimbursement for services, on behalf of the State, from the person or persons chargeable by law for the care and necessities of a child. RSA 169-C:27, V. On May 31, 2005, the district court granted the County's motion and P.S. submitted a financial affidavit. On June 14, 2005, the court granted the County's motion for parental reimbursement. P.S. failed to make any payments and in August 2005, the County filed a motion for contempt, which was granted by the court.

In April 2005, a local attorney filed an appearance in conjunction with a motion for temporary custody on behalf of P.S. in the district court. At a *"Bill F."* review hearing held on July 14, 2005, *see In re Bill F.*, 145 N.H. 267 (2000), the court denied P.S.' motion for custody of his daughter on the basis that he "is unfit to perform his parental duties." Through his attorney, P.S. filed a motion for reconsideration on September 1, 2005, which was denied by the district court. On September 9, 2005, Attorney Paula Werme, on behalf of P.S., filed an appearance and a motion to be appointed as counsel.

The district court initially granted the motion, but then reversed its decision after determining that RSA 169-C:10, II(a) (2002) precluded appointment of counsel for P.S. The district court also issued a protective order prohibiting unauthorized contact between P.S. and his daughter. On November 22, 2005, P.S. filed a petition for writ of certiorari in superior court arguing, *inter alia*, that he was entitled to court-appointed counsel. He also asked the superior court to appoint counsel, which request was denied.

On February 24, 2006, the superior court granted DCYF's motion to dismiss P.S.' writ as untimely filed. P.S. appeals these decisions, raising numerous issues in his notice of appeal. We bifurcated the appeal and address here only the issues regarding appointment of counsel.

On appeal, P.S. argues that RSA 169-C:10, II(a) violates his due process rights by prohibiting assignment of court-appointed counsel in RSA chapter 169-C proceedings. DCYF counters that due process does not require appointment of counsel for indigent parents who are not the subject of abuse or neglect accusations in RSA chapter 169-C proceedings.

> The Child Protection Act requires the court to appoint counsel to represent an indigent parent who has been accused of abusing or neglecting his or her own child. RSA 169-C:10, II(a). The statute also states that the court "may appoint" counsel for an indigent parent not accused of abuse or neglect "if the parent is a household member and such independent legal representation is necessary to protect the parent's interests." *Id.* ... RSA 169-C:10, II(a), however, specifically provides that "[t]he court shall not appoint an attorney to represent any other persons involved in a case brought under this chapter."

*In re Shelby R.*, 148 N.H. 237, 239 (2002). Because P.S. was not accused of abuse or neglect, and was never a member of the household, the district and superior courts denied his requests for court-appointed counsel.

P.S. relies upon the Fourteenth Amendment to the United States Constitution and Part I, Article 2 of the New Hampshire Constitution. We first address this issue under the State Constitution, and cite federal opinions for guidance only. *In the Matter of Jeffrey G. & Janette P.*, 153 N.H. 200, 203 (2006).

"This court is the final arbiter of the due process requirements of the State Constitution." *In re Brittany S.*, 147 N.H. 489, 491 (2002). There is no dispute that a natural parent's role in family life is a fundamental liberty interest under Part I, Article 2 of the State Constitution. *In re Shelby R.*, 148 N.H. at 239. Having determined that a natural parent has a legally protected interest, we next determine whether due process requires appointment of counsel to an indigent natural parent by balancing three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Id.* at 240.

The primary private interest of a non-custodial parent who is not accused of abuse or neglect is the parent-child relationship. *Id.* P.S. also argues that he has a significant financial interest given that Hillsborough County, on behalf of the State, can seek the recovery of incurred expenses in proceedings conducted pursuant to RSA chapter 169-C. RSA 169-C:27.

An indigent parent has the right to court-appointed counsel in certain limited situations. RSA 169-C:10 specifically affords counsel for an indigent parent accused of abuse or neglect. In *Shelby R.*, we held in a plurality decision that accused step-parents in abuse and neglect proceedings also have a constitutional right to court-appointed counsel. *In re Shelby R.*, 148 N.H. at 243. For both parent and step-parent, the interests affected include the potential for a breakdown of the family relationship and having his or her name entered in DCYF's central registry as an abusive or neglectful parent. RSA 169-C:35 (Supp. 2006); *In re Shelby R.*, 148 N.H. at 244 (Duggan, J., concurring in part and dissenting in part).

Although an unaccused, non-custodial parent's interests may be similar in part, on balance they are less compelling. Although such a parent does face potential exposure to parental reimbursement expenses, a protected property interest, he or she does not share the same interests of preserving a marital relationship or a family dynamic that a parent living in the household would have. *Cf. In re Shelby R.*, 148 N.H. at 240. Moreover, an unaccused parent is not faced with the potential of having his or her name entered in DCYF's central registry.

Next, we examine the risk that an unaccused, non-custodial parent will be erroneously deprived of his or her interests through the procedures used. We find this risk to be minimal. P.S. argues that "[a] parent without an attorney cannot be expected to navigate the complex legal consequences under multiple provisions of the Child Protection Act ... after a Petition for Abuse/Neglect [has been] filed on the other parent."

RSA 169-C:19-e (2002) provides:

> A parent who has not been charged with abuse or neglect shall be afforded, upon request, a full hearing in the district or family court regarding his or her ability to obtain custody. At the hearing, the parent shall be provided the opportunity to present evidence pertaining to his or her ability to provide care for the child and shall be awarded custody unless the state demonstrates, by a preponderance of the evidence, that he or she has abused or neglected the child or is otherwise unfit to perform his or her parental duties.

This provision, which provides for what is known as a *"Bill F.* hearing," protects the unaccused parent's rights and places the burden upon the State to show that the parent seeking custody is unfit. *In re Bill F.*, 145 N.H. at 274-76. The parent thus has the right to present evidence, but does not have to carry the burden of proof. This, together with the facts that the district court is not bound by the technical rules of evidence and that the proceedings are held before a judge without a jury, *In re Brittany S.*, 147 N.H. at 493, significantly reduces the risk that an unaccused parent will suffer an erroneous deprivation of the interests discussed above.

In addition, in abuse and neglect proceedings, the dispositional order is not permanent and is subject to review. *See* RSA 169-C:22 (2002) (review required upon party's motion for changed circumstances); RSA 169-C:24 (2002) (required annual review and discretionary review upon party's request).

> Finally, we examine the government's interest, including the function involved and the fiscal and administrative burdens that the provision of court-appointed counsel would entail. The purpose of the Child Protection Act is "to provide protection to children whose life, health or welfare is endangered and to establish a judicial framework to protect the rights of all parties involved in the adjudication of child abuse or neglect cases." RSA 169-C:2, I. We identify two important State interests advanced by the Act: (1) protecting children; and (2) protecting the rights of all parties involved in abuse or neglect proceedings.

*In re Shelby R.*, 148 N.H. at 241.

RSA chapter 169-C is to be liberally construed "[t]o provide effective judicial procedures through which the provisions of [RSA chapter 169-C] are executed and enforced and which recognize and enforce the constitutional and other rights of the parties and assures them a fair hearing." RSA 169-C:2, II(c) (2002); *In re Shelby R.*, 148 N.H. at 241. With this in mind, we weigh the government's interest in assuring the parties involved have a fair hearing against the burden of requiring that counsel be appointed for unaccused, non-custodial parents. In this case, we recognize that providing court-appointed counsel to all unaccused, non-custodial parents in abuse and neglect proceedings would place substantial fiscal as well as administrative burdens upon the State. *See id.*

Accordingly, after balancing the interests outlined above, the minimal likelihood of a deprivation of these interests, and the fiscal and administrative burdens on the State, we hold that due process does not

require that counsel be appointed for an unaccused, non-custodial parent in RSA chapter 169-C proceedings.

Because the State Constitution is at least as protective of individual liberties in these circumstances as the Federal Constitution, *see In re Tracy M.*, 137 N.H. 119, 122 (1993), we reach the same result under the Federal Constitution.

We need not address the remaining arguments contained in P.S.' brief because this appeal was expressly limited to the issues regarding appointment of counsel.

*Orders denying appointment of counsel affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.