Sullivan County Probate Court
No. 96-775

IN RE BABY K.

December 18, 1998

*Elizabeth Cazden,* of Manchester, by brief and orally, for the petitioner, Rodney P.

*Law Office of Joshua L. Gordon,* of Concord (*Joshua L. Gordon* on the brief and orally), for the respondents, Donna and Sven R.

HORTON, J. The petitioner, Rodney P., appeals a decision of the Sullivan County Probate Court (*Feeney,* J.) terminating his parental rights over Baby K. We vacate and remand.

Rodney P. is indigent and presently incarcerated in federal prison in Pennsylvania on a drug offense for which he will likely be released between September 1999 and April 2000. While in pretrial confinement in 1994, he learned that his girlfriend, Marlo K., was pregnant with his child. Marlo K. gave birth to Baby K. in May 1995, and within eight days after Baby K.'s birth, Baby K. was in the custody of Donna and Sven R., his prospective adoptive parents.

Donna and Sven R. moved to terminate Rodney P.'s parental rights in the Sullivan County Probate Court in December 1995. In preparation for trial, the parties met with the court to prepare a pretrial scheduling order in May 1996. At the pretrial conference, Rodney P. was represented by appointed counsel, different than his counsel on appeal. The pretrial order indicates that the defendant would participate in the final hearing by telephone, that the court was uncertain whether Rodney P. would be a witness, and that any issues regarding Rodney P.'s due process rights or attendance were to be filed by a specified date. The record does not indicate that any such memoranda were filed by either party. On October 2, 1996, Rodney P. filed a motion to stay proceedings, which was denied.

The termination hearing was scheduled for October 16, 1996. At the outset of the hearing, counsel for Rodney P. objected to his client's absence from the proceeding and again requested that the proceedings be stayed until his client could be present. The judge denied the request. The judge then described the telephonic procedure to be employed:

> I will allow Mr. P[] to be contacted by telephone and have, in fact, made arrangements with the prison in Pennsylvania to accept that call. We will wire Mr. P[]'s counsel with a headphone so that he can, in fact, be in communication with

his client and afford him all possible rights that we can this morning.

I would expect that we will not be unduly interrupted during the course of this trial by an individual who's not here. If the telephone communications gets to be difficult and distracting, we'll deal with that issue if it arises. Mr. P[] should be counseled that he will be talking into [counsel's] left ear and [counsel] needs to be able to concentrate on the trial that's proceeding here.

The court recessed to establish a telephone connection with Rodney P. Immediately after this procedure was instituted, Rodney P.'s counsel objected, stating, "Is there any way to make it any louder? Mr. P[] says he can't hear anything, except my voice." The court did not correct the situation but responded:

Less [*sic*] we forget, Mr. P[]'s right was to appear at this trial should he have desired to have been here. He's not here. We are, in fact, making him available to you with that telephone. If he can hear the rest of these proceedings, that would please me. If he can't hear the rest of the proceedings, we must still go on here.

Counsel later renewed the objection, stating, "Mr. P[] would like to state for the record from him that he's objected to not being able to communicate with the court. And on his behalf, I will make that statement to the court." The court responded: "He's already done that and we've dealt with that issue at our earlier motions hearing." Following the hearing, the court terminated Rodney P.'s parental rights.

On appeal, Rodney P. raises one issue:

Whether it is a violation of fundamental due process rights under Part 1, Article 2 of the New Hampshire Constitution and Amendment 14 of the United States Constitution to conduct a hearing on the merits in a termination of parental rights proceeding wherein an indigent and incarcerated respondent is not afforded meaningful access to the courts and an opportunity to be heard and seen and to have his own credibility judged by a trier of fact and to call and cross-examine witnesses, and, rather, is permitted only telephonic communication with his legal counsel during such hearing.

Because the Federal Constitution offers no greater due process protection than does our State Constitution, we rely on our State

Constitution and use federal law only as an aid to our analysis. *See State v. Winn*, 141 N.H. 812, 814, 694 A.2d 537, 539 (1997); *Larose v. Superintendent*, 142 N.H. 364, 367, 702 A.2d 326, 329 (1997).

■ Rodney P. argues that his constitutional rights were violated both by his physical absence from the proceedings and by the manner in which the proceedings were conducted. Our review of the record indicates that Rodney P. never specifically requested a writ to compel his attendance at the hearing. *Cf. Strube v. Strube*, 764 P.2d 731, 735 (Ariz. 1988). Further, other than the October 2 motion to stay the proceedings, there is no indication in the record that counsel ever filed a memorandum on "defendant[']s due process/attendance issues" as required by the pretrial order. At the hearing, Rodney P.'s counsel again moved for a stay until Rodney P. could attend. A motion to compel attendance, if granted, would have resulted in Rodney P.'s presence at the scheduled termination hearing; in contrast, a motion to stay the proceedings would have delayed the termination hearing until the defendant could attend at a later date. Rodney P.'s attendance at the termination hearing was never squarely presented to the trial court until the day of the hearing, and we have no rulings or actions to review on appeal other than the requests for stays. The court did not abuse its discretion by denying the motions to stay the proceedings. *See Tenn, Trustee v. 889 Associates, Ltd.*, 127 N.H. 321, 325, 500 A.2d 366, 369 (1985); *cf. In Interest of F.H.*, 283 N.W.2d 202, 210 (N.D. 1979) (upholding refusal to grant a continuance). Assuming without deciding that the attendance issue was preserved for appellate review, *see State v. Hurlburt*, 135 N.H. 143, 145, 603 A.2d 493, 494 (1991), *cert. denied*, 503 U.S. 1008 (1992), we conclude that due process does not absolutely require an incarcerated parent's physical presence at a parental rights termination hearing, provided the parent is otherwise afforded procedural due process at the hearing. *In re Interest of L.V.*, 482 N.W.2d 250, 258 (Neb. 1992). In this case, however, we conclude that Rodney P. was not afforded procedural due process at the hearing.

By statute, informal procedures can be used in termination cases. *See* RSA 170-C:10 (1994). The amount of formality that due process requires, however, is an undeveloped area. *See* 3 C. DOUGLAS & C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 8.10 n.103, at 215 (2d ed. 1992). This court is the final arbiter of our constitution's due process requirements. *See Smith v. State*, 118 N.H. 764, 768-69, 394 A.2d 834, 838 (1978).

■ To determine the process due in a particular proceeding, we employ a three-prong balancing test. We consider

> the private interest that will be affected by the official action . . . the risk of an erroneous determination of such interest through the procedures used, and the probable value, if any, of the additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute safeguards would entail.

*Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 678, 394 A.2d 828, 831 (1978) (quotation omitted); *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

■ As for the private interest at stake, parental rights are "natural, essential, and inherent rights" within the meaning of the State Constitution. *State v. Robert H.*, 118 N.H. 713, 715, 393 A.2d 1387, 1388 (1978), *disavowed on other grounds by In re Tricia H.*, 126 N.H. 418, 424, 493 A.2d 1146, 1151 (1985). "The loss of one's children can be viewed as a sanction more severe than imprisonment." *Id.* at 716, 393 A.2d at 1389. Because of the significance of this interest, to terminate parental rights, due process requires proof beyond a reasonable doubt, the same burden of proof required for a criminal conviction and incarceration. *See id.*

The informal procedures used in this case increased the risk of an erroneous determination. Using a telephone connection as employed here may prevent the party from hearing witnesses or the proceedings, and may place greater burdens on the party's counsel, affecting counsel's ability to represent the client's interests. As a result, the party may be unable to respond effectively to evidence presented in the proceeding. While the proceeding occurs, the telephonically connected party is practically excluded from any meaningful participation.

Our consideration of the third factor, the function involved and the fiscal and administrative burdens that would be placed on the government by securing Rodney P.'s presence, is complicated by the omissions in the record before us. *Cf. In re Juvenile Appeal*, 446 A.2d 808, 812 (Conn. 1982). On appeal, the appellant carries the burden of proving that the procedures employed violated due process. *See State v. Rezk*, 135 N.H. 599, 601, 609 A.2d 391, 393 (1992). The record contains no denials of any motions requesting Rodney P.'s attendance at the termination hearing, and therefore Rodney P. has failed to demonstrate that requiring his presence would not impose significant burdens on the State.

Furthermore, the State, in its role as *parens patriae*, has a significant interest in protecting the best interest of the child, *see In re Tracy M.*, 137 N.H. 119, 124, 624 A.2d 993, 996 (1993), which requires terminating parental rights in certain instances. *See* RSA 170-C:1 (1994); *In re Billy T.*, 124 N.H. 576, 579, 474 A.2d 1010, 1012 (1984); *In re Juvenile Appeal*, 446 A.2d at 813. In those instances, it is essential that termination cases be resolved as expeditiously as is practical, since delay postpones a child's opportunity to enjoy a stable living situation. *See In re Billy T.*, 124 N.H. at 578-79, 474 A.2d at 1012 (noting that delay "would be antithetical to the interest of the child"). While a criminal defendant has a due process interest in being present at his or her trial, *cf. State v. Castle*, 128 N.H. 649, 651, 517 A.2d 848, 849 (1986), the State has an interest in parental rights termination cases not present in criminal cases.

To identify sufficient procedures, we look to protections afforded in other States. Instead of requiring actual attendance, many States provide incarcerated parents other procedural safeguards, such as an opportunity to "participate" meaningfully by telephone, provide a deposition, or review transcripts of witness testimony and provide rebuttal testimony, either via deposition or telephonic connection to the courtroom. *See, e.g., In re Juvenile Appeal*, 446 A.2d at 811-12; *In re Randy Scott B.*, 511 A.2d 450, 453 (Me. 1986); *In re Interest of L.V.*, 482 N.W.2d at 259; *In Interest of F.H.*, 283 N.W.2d at 208-09; *State ex rel Juv. Dept. v. Stevens*, 786 P.2d 1296, 1299 (Or. Ct. App. 1990), *cert. denied*, 498 U.S. 1119 (1991); *In Interest of S.K.S.*, 648 S.W.2d 402, 405 (Tex. Ct. App. 1983); *State in Interest of M.A.V. v. Vargas*, 736 P.2d 1031, 1033 (Utah Ct. App. 1987); *In Interest of Darrow*, 649 P.2d 858, 861 (Wash. Ct. App. 1982).

To satisfy due process, an incarcerated parent must have an opportunity for meaningful participation in the termination process. As noted above, such participation can occur in various ways. For example, in *Stevens*, the parent "testified by telephone and was able to consult with his counsel in the same way. His testimony followed that of the adverse witnesses and responded to it point by point, and his counsel was able to cross-examine the adverse witnesses meaningfully." *Stevens*, 786 P.2d at 1299 (footnote omitted). In a similar case, an incarcerated father received transcripts of a first hearing and discussed the testimony with counsel. *In re Juvenile Appeal*, 446 A.2d at 811-12. The father participated at a second hearing held three months later, where "a speaker was attached to a telephone at the court in Connecticut and the respondent testified from his California prison; his voice was audible to all those attending the

hearing." *Id.* at 812; *see also In Re Interest of L.V.*, 482 N.W.2d at 254.

Here, in contrast, the mechanisms employed did not provide Rodney P. with a fair opportunity to participate and to respond because his attorney had to serve as an advocate and a conduit, a role probably not anticipated before the hearing. While respondent's counsel correctly notes that no specific objection to this dual role was made, objections at the commencement of the proceedings indicate that counsel did not anticipate this arrangement. Opposing counsel argues that Rodney P. should have submitted a deposition prior to trial, or specifically requested alternate safeguards at the hearing. Admittedly, alternative procedural safeguards *could* have been employed, such as Rodney P. submitting a deposition, or requesting to review transcripts after the hearing. However, the trial court suggested the telephonic alternative at the pretrial conference, which, if conducted properly, *would* have satisfied due process. *Cf. In Re Interest of L.V.*, 482 N.W.2d at 259 (providing incarcerated parent meaningful access to termination hearing through telephone connection). Further, other courts using procedural safeguards other than conference calls have informed the parties of the procedures before the hearing was held. Under these circumstances, Rodney P.'s objections to the flawed telephonic procedure at the hearing were sufficient to preserve this issue for appellate review.

After "balancing the private interest at stake, the risk of an erroneous deprivation of that interest, and the government's interest," *Ladd v. Coleman*, 128 N.H. 543, 545, 517 A.2d 811, 813 (1986), we conclude that the telephonic procedures employed, without other procedural safeguards, were insufficient to satisfy due process. If the court provides a telephonic connection to the courtroom, it must do so in a manner that provides the petitioner an opportunity to effectively and actively participate in the proceeding. "It would have been a simple matter to allow the appellant to participate . . . via conference call. The appellant, however, was denied his day in court." *Louis Frank Tageant, Jr. v. Elana Mae Tageant*, 909 P.2d 322, 323 (Wyo. 1996) (quotation and brackets omitted) (holding due process violated by excluding inmate from divorce proceeding).

Although we hold that the procedures employed in Rodney P.'s termination proceeding did not satisfy due process, we do not mandate particular procedures that must be employed. "Depending on the case, an incarcerated litigant might obtain meaningful access through a telephone connection to the courtroom, through counsel,

or possibly through written communications with the court." *State v. Mott*, 692 A.2d 360, 363-64 (Vt. 1997) (citations omitted).

On remand, the trial court may determine the extent to which additional evidence may be required and the mechanisms, consistent with this opinion, to ensure the defendant effective and meaningful participation in the proceeding.

*Vacated and remanded.*

All concurred.