Jacqueline A. ORVILLE, Respondent Below, Appellant,

v.

DIVISION OF FAMILY SERVICES, Petitioner Below, Appellee.

No. 447, 1999.

Supreme Court of Delaware.

Submitted: Feb. 29, 2000.

Decided: March 30, 2000.

Kimberly A. Harrison, of Doroshow, Pasquale, Krawitz, Siegel & Bhaya, Millsboro, Delaware, for appellant.

Peter S. Feliceangeli, of the Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

This is an appeal from the Family Court. The Division of Family Services of the Department of Services for Children, Youth and Their Families ("DFS") filed a petition to terminate the parental rights of the respondent-appellant, Jacqueline A. Orville. Following a hearing on September 10, 1999, the Family Court entered a final judgment terminating Orville's parental rights.

Orville was incarcerated in New Jersey on the date of the hearing. The Family Court apparently contemplated that Orville would participate in the entire proceeding by telephone. Orville's court-appointed attorney was advised, however, that the New Jersey prison officials would permit her to participate by telephone for only a portion of the hearing.

Therefore, prior to the beginning of the termination of parental rights hearing, Orville's attorney moved for a continuance. DFS opposed that motion. The Family Court denied Orville's motion, stating that even though:

> she's in New Jersey, in prison, and that they will not permit her to be here or to be on the telephone the entire time does not, in my opinion, supersede the interest of the—the best interest of the child in this case, so I'm not going to grant the continuance.

In this appeal, Orville argues that the Family Court violated her due process rights by not granting her motion for a continuance until such time as she could be physically present for trial, or by providing her with a transcript of DFS's case, for the purpose of deciding whether to recall certain witnesses for cross-examination and otherwise preparing her own presentation of evidence, prior to the entry of a final judgment.

The record reflects that the Family Court properly exercised its discretion in denying a continuance until Orville could be present *physically* at a hearing in Delaware. The record also reflects, however, that the hearing was conducted in a manner that violated Orville's federal constitutional right to procedural due process. Accordingly, this matter will be remanded for further expedited proceedings in accordance with Orville's due process rights.

### Facts

A Petition for Termination and Transfer of Parental Rights was filed by DFS. The petition seeks termination of the parental rights of Orville in her child, Diane B. Orville,[1] born June 24, 1996. The petition alleges that termination of the parental rights of Orville is sought on the ground that she is not able or has failed to plan adequately for the child's needs or her mental and emotional health and development pursuant to 13 *Del.C.* § 1103(5). Alternatively, termination is sought on the ground of abandonment pursuant to 13 *Del.C.* § 1103(2). Orville opposed the termination of her parental rights.

On July 23, 1999, the Family Court appointed an attorney to represent Orville in responding to DFS's petition to terminate her parental rights. A hearing was set for September 10, 1999. Prior to the hearing, Orville and her attorney received copies of all documents which DFS intended to introduce into evidence.

Orville was incarcerated in New Jersey at the time of trial. Prior to the beginning of the hearing, the Family Court learned that the prison officials in New Jersey would not permit Orville to participate by telephone for the entire hearing. Based on that information, Orville's attorney moved for a continuance. The Family Court denied that request.

DFS then proceeded with its case. Orville was represented by counsel throughout the hearing. When DFS presented its case, however, Orville was not connected telephonically to the proceedings. The Court–Appointed Special Advocate ("CASA")[2] also presented, in Orville's absence, its testimony on the child's best interests. Orville's attorney had an opportunity to cross-examine the CASA and each of DFS's four witnesses but without consulting Orville.

At the conclusion of the DFS case, Orville was connected to the courtroom by telephone. A recess was called to permit Orville to confer with her attorney. The attorney summarized the testimony of the CASA and DFS's four witnesses for Orville.

Orville and her attorney indicated they were ready to resume trial. Orville testified on her own behalf. Orville did not call any additional witnesses. She also did not recall either the CASA or any of DFS's witnesses.

After she testified, Orville remained connected to the courtroom by telephone. She heard the attorney's closing arguments. Orville also heard the Family Court's decision.

### Termination Requires Due Process

 A party is entitled to due process prior to the termination of a right protected by the Fourteenth Amendment to the

---

1. The biological father consented to the termination of his parental rights.

2. *See* Fam.Ct.Civ.R. 205.

United States Constitution.[3] The due process clause in the United States Constitution "imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair."[4] The United States Supreme Court and this Court have recognized, as a fundamental liberty interest,[5] a parent's interest in maintaining a relationship with his or her child. Accordingly, both procedural and substantive, due process must be afforded to the parties in a termination of parental rights proceeding.[6] Procedural due process consists of

> notice to the person whose right is affected by a proceeding ...; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel ...; and a hearing before an impartial decisionmaker.[7]

Similarly, this Court has stated that due process entails

> providing the parties to the proceeding with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends.[8]

■ In a "termination of parental rights proceeding, [this Court] analyzes ... due process standards in accordance with the factors established by the United States Supreme Court in *Mathews v. Eldridge.*"[9] Those factors are:

> (1) the private interest that will be affected by the official action; (2) the risk that there will be an erroneous deprivation of the interest through the procedures used and the probable value of any additional or substitute procedural safeguards; and (3) the government interest involved, including the added and fiscal and administrative burdens that additional or substitute procedures would require.[10]

DFS acknowledges that the termination of Orville's parental rights adversely affects Orville's private interests under the first factor of the *Mathews* test. "The parental right is a sacred one."[11] DFS admits that Orville's fundamental liberty interest in retaining her parental rights is substantial.[12]

### *Meaningful Participation*

■ This is not the first time we have been called upon to balance the second and

**3.** *U.S. Const.* amend XIV, § 1.

**4.** *Allen v. Division of Child Support Enforcement,* Del.Supr., 575 A.2d 1176, 1178 (1990) (quoting *Lassiter v. Department of Soc. Services,* 452 U.S. 18, 33, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)).

**5.** *See Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *see also In re Stevens,* Del.Supr., 652 A.2d 18, 24 (1995).

**6.** *Santosky v. Kramer,* 455 U.S. at 753, 102 S.Ct. 1388 (citing *Lassiter v. Department of Soc. Services,* 452 U.S. 18, 37, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (first dissenting opinion)).

**7.** *In re L.V.,* 240 Neb. 404, 482 N.W.2d 250, 257 (1992) (citing *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).

**8.** *Bell Atlantic Delaware, Inc. v. Public Serv. Comm'n,* Del.Supr., 705 A.2d 601, 605 (1997) (quoting *Carousel Studio v. Unemployment Ins. Appeal Bd.,* Del.Super., C.A. No. 89A–AU–7, Babiarz, J., 1990 WL 91108 (June 26, 1990)).

**9.** *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *In re Heller,* Del.Supr., 669 A.2d 25, 30 (1995) (citing *In re Burns,* Del.Supr., 519 A.2d 638, 645 (1986) (citing *Lassiter v. Dept. of Soc. Services of Durham County,* 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981))).

**10.** *In re Heller,* 669 A.2d at 31.

**11.** *In re Burns,* Del.Supr., 519 A.2d 638, 645 (1986).

**12.** *Id.* at 646.

third *Mathews* factors in a proceeding to terminate the parental rights of an incarcerated person. In a prior opinion, this Court has held that an incarcerated individual has no constitutional due process right to be physically present at a hearing to terminate his or her parental rights.[13] Nevertheless, due process requires "an incarcerated parent [to] have an opportunity for meaningful participation in the termination process."[14]

This Court has concluded that due process was satisfied when the Family Court conducted a proceeding to terminate an incarcerated mother's parental rights by affording that individual the opportunity to participate in the *entire* hearing by telephone from prison.[15] In that appeal, the issue was an alleged equipment problem with the telephone connection during the hearing. This Court determined that the trial judge made sufficient efforts to assure that the incarcerated mother could hear all of the testimony and that all of the documentary evidence was read to her.[16] This Court also stated:

> In future similar proceedings, however, the Family Court should, before such proceedings commence, make certain that the communication system is working properly and that all parties can effectively hear (and where applicable, see) the proffered testimony.[17]

The basis for this Court's holding in *Heller* was our conclusion that an incarcerated parent's right to due process included an opportunity to have actual knowledge of the testimonial and documentary evidence being presented in support of the petition to terminate his or her parental rights. DFS argues, however, that Orville was afforded due process because she was represented by counsel, notwithstanding her exclusion from participation in the hearing by telephone when DFS presented its evidence against her. A majority of courts from other jurisdictions that have considered similar arguments have rejected DFS' position.[18]

### Other Jurisdictions

The Supreme Court of New Hampshire recently reviewed the due process procedures implemented by other jurisdictions in termination procedures when a parent is incarcerated.[19] In *In re Baby K.*, the father of the minor child was incarcerated in another state at the time scheduled for the hearing to terminate his parental rights.[20] The trial court in New Hampshire originally intended for the father to participate during the entire hearing by telephone.[21] There were problems with the telephone transmission, however, that prevented the father from hearing the proceedings. Nevertheless, the New Hampshire trial court did not recess or adjourn the proceeding to rectify the father's known inability to hear the telephonic transmission.[22] On appeal, the Supreme Court of New Hampshire reviewed the three *Mathews* factors and held that, even though he was represented by an attorney, a termination proceeding that the incarcerated father

13. *In re Heller*, Del.Supr., 669 A.2d 25, 32 (1995).

14. *In re Baby K.*, 143 N.H. 201, 722 A.2d 470, 474 (1998).

15. *In re Heller*, 669 A.2d at 32.

16. *Id.*

17. *Id.*

18. *In re Baby K.*, 143 N.H. 201, 722 A.2d 470 (1998) (collecting cases); *In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808 (1982); *In re Randy Scott B.*, Me.Supr., 511 A.2d 450 (1986); *In the Interest of Darrow*, 32 Wash. App. 803, 649 P.2d 858 (1982); *State v. Mott*, 166 Vt. 188, 692 A.2d 360 (1997).

19. *In re Baby K.*, 143 N.H. 201, 722 A.2d 470 (1998).

20. *Id.* at 471.

21. *Id.* Arrangements were also made for the father's attorney to wear a headset so that the father could speak with him privately during the hearing.

22. *Id.* at 472.

could not hear denied that father "a fair opportunity to participate."[23]

The facts of *In re Baby K.* are similar to those in Orville's case. The Family Court's written decision states it expected that Orville would "be available throughout the hearing to listen to the evidence and to testify but the security concerns of the correctional facility where [Orville was] incarcerated would not enable her to remain on the line for the entire length of the hearing." Thus, the record reflects that the Family Court originally intended to conduct a hearing in complete accordance with this Court's holding in *Heller.*

### Orville Denied Due Process

■ The entire focus of a proceeding to terminate the parental rights of an incarcerated person is on that individual's alleged failure to discharge his or her parental responsibilities. Consequently, the incarcerated parent may have either exclusive or unique knowledge of any evidence that can be marshalled in response to the termination petition. Therefore, due process requires that an incarcerated parent have an opportunity to have actual knowledge of the evidence presented in support of the petition to terminate before he or she is called upon to present a defense.

■ The Family Court should have continued the proceeding for a brief time until Orville would have been able to participate by telephone during the entire hearing. In the alternative, following the presentation of DFS's case, the hearing should have been continued for a short time until another day, and a reproduction[24] of the testimony forwarded to Orville and her attorney for review. The hearing should have reconvened expeditiously, with Orville participating by telephone at a later date. Such a procedure would permit: (a) Orville's attorney to recall the CASA or any of DFS's witnesses who were necessary for additional cross-examination; (b) Orville to testify; and (c) Orville to present other testimonial or documentary evidence in opposition to DFS's petition for termination. These reasonable safeguards would have effectively balanced the second and third *Mathews* factors by eliminating the risk of an erroneous decision, while simultaneously accommodating the government's good faith efforts on behalf of a dependent or neglected child.

The Family Court failed to provide Orville an opportunity to participate in a meaningful manner, either by telephone during the entire hearing or by permitting her to review a reproduction of the case against her before presenting her own case. Accordingly, we hold the Family Court did not afford Orville her federal constitutional right to due process in the proceeding to terminate her parental rights.[25] That can be remedied, however, by a remand to the Family Court for additional expedited proceedings in accordance with this opinion.

### Permanent Placement Priority

The federal Family Preservation and Support Act provides multi-year grants to state Supreme Courts to improve how courts within each state handle cases involving children in foster care, termination of parental rights, and adoption proceedings. These grants are administered through the U.S. Department of Health and Human Services, Administration for Children and Families, Children's Bureau. The Delaware Supreme Court and the Family Court have participated in this program for several years.[26]

23. *Id.*

24. That reproduction can be a transcript or a tape-recording.

25. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

26. Marsha L. Miller, et al., Supreme Court of the State of Delaware, *Court Improvement Project of the Delaware Supreme Court: An Assessment of Delaware's Court Performance in Child Welfare Cases with Recommendations for Improvement* (1997).

■ The Court Improvement Project of the Delaware Supreme Court issued its first report in 1997 "An Assessment of Delaware's Court Performance in Child Welfare Cases with Recommendations for Improvement." That report concluded that a paramount "goal in child welfare cases is to establish a safe permanent home for the child in a timely fashion."[27] This can be accomplished by successfully reuniting a child in foster care with the natural parents or, if that good faith effort fails, by terminating those parental rights and arranging for an adoption. The Delaware studies have determined that the judiciary plays a vital role in the timely establishment of permanency for children in individual cases.[28] Therefore, if it becomes necessary to adjourn and reconvene a termination hearing in the future, under circumstances similar to Orville's, the Family Court should make every effort to complete the hearing within thirty days of the original adjournment.

The Delaware Family Court recently published a monograph entitled *"Family Court Performance Standards and Measures."*[29] Standard 2.3 relates to "Prompt Implementation of Law and Procedure." It requires the Family Court to integrate into its operations changes mandated by statute, case law, or court rules as soon as those changes become effective.[30] In an effort to support the Family Court's commendable efforts to identify and promptly implement the "best practices," the Clerk of this Court is directed to send a copy of this Opinion to all Family Court Judges.

### Conclusion

This matter is remanded to the Family Court for additional expedited proceedings in accordance with this opinion. Jurisdiction is retained by this Court.[31]

---

27. *Id.* at 75.

28. *Id.* at 77.

29. Family Court of the State of Delaware, Family Court Performance Standards and Measures (December 1999).

30. *Id.* at 20–21.

31. Supr.Ct.R. 19(c).