Cheshire County Probate Court
No. 2001-523

## IN RE NOAH W.

Argued: May 8, 2002
Opinion Issued: December 13, 2002

*Philip T. McLaughlin,* attorney general (*Ann F. Larney,* associate attorney general, on the brief and orally), for the State.

*Law Office of Dawn E. Caradonna,* of Peterborough (*Dawn E. Caradonna* on the brief and orally), for the respondent, Dawn W.

DALIANIS, J. The respondent, Dawn W., appeals the decision of the Cheshire County Probate Court (*Patten,* J.) terminating her parental rights over her son, Noah W., pursuant to RSA 170-C:5, III (2002). We affirm.

Noah W. was born on April 27, 1998. Two days later, pursuant to a juvenile *ex parte* order of the Jaffrey-Peterborough District Court (*Runyon,* J.), Noah W. was put under the protective supervision of the division for children, youth and families (DCYF) and placed in foster care. On September 15, 1998, the district court issued an adjudicatory order, finding child neglect by the respondent pursuant to RSA chapter 169-C, incorporating a consent agreement that had been signed by the respondent and her counsel. The order gave DCYF legal custody of Noah W. and specified a variety of actions required for the respondent to be reunited with her son. Because of the respondent's chronic failure to actively pursue and complete the prescribed actions, the district court ordered both a cessation of reunification efforts and the completion of a social study to support a termination of parental rights proceeding. The district court conditioned the order upon the respondent's right to object and request a further hearing; the respondent never did so.

On December 21, 2000, the State filed a petition to terminate the respondent's parental rights over Noah W. The petition alleged that the respondent had failed to correct the conditions leading to the finding of neglect within eighteen months of the finding. Specifically, the petition alleged that the respondent had failed to maintain suitable housing, demonstrate financial security, effectively participate in her own mental health care and demonstrate the ability to provide proper parental care, despite reasonable efforts of DCYF under the direction of the district court.

After a hearing, the probate court found that the State had shown beyond a reasonable doubt that the respondent, subsequent to a finding of neglect under RSA chapter 169-C, had failed over a period of twelve

months from the finding to correct those conditions in her life that led to the finding of neglect, despite reasonable efforts to assist her to do so under the direction of the district court. *See* RSA 170-C:5, III. Finding that it was in Noah W.'s best interest, the court ordered the termination of the respondent's parental rights, granted DCYF guardianship of Noah W. and ordered DCYF to pursue an adoption for the child. *See In re Shannon M.*, 146 N.H. 22, 27 (2001). This appeal followed.

On appeal, the respondent argues that the probate court erred when it: 1) determined that the New Hampshire Rules of Evidence (Rules) did not apply to the termination proceeding; 2) determined that reports filed by DCYF in the district court were not inadmissible hearsay; and 3) allowed unreliable hearsay to be admitted into evidence, thus violating her right to due process.

We will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. *In re Antonio W.*, 147 N.H. 408, 412 (2002). RSA 170-C:10 (2002) reads, in pertinent part:

> Cases under this chapter shall be heard by the court sitting without a jury. The hearing may be conducted in an informal manner and may be adjourned from time to time. . . . The court's finding with respect to grounds for termination shall be based upon clear and convincing evidence, provided that relevant and material information of any nature, including that contained in reports, studies or examinations, may be admitted and relied upon to the extent of its probative value. When information contained in a report, study or examination is admitted in evidence, the person making such a report, study or examination shall be subject to both direct and cross-examination if he is residing or working within the state, or if he is otherwise reasonably available.

As the respondent does not question the relevance and materiality of the "information" at issue, we assume, without deciding, that the information met this threshold determination for admission under RSA 170-C:10.

The respondent first contends that the probate court erred in determining that the Rules do not apply to termination proceedings. Our review of the record shows that the probate court made no such blanket determination. Instead, the probate court determined that it may admit evidence in a termination proceeding under RSA 170-C:10 if the evidence is both relevant and material, even if the same evidence would be inadmissible under the Rules. Accordingly, we limit our review to what the probate court actually determined.

The respondent argues that this court has assumed that the Rules apply in termination proceedings. She is correct that, on certain occasions, we have assumed without deciding that the Rules apply in termination proceedings. *See, e.g., In re Shannon M.*, 146 N.H. at 28; *In re Brittany L.*, 144 N.H. 139, 144 (1999). It is disingenuous, however, for her to state that "[t]his Court has assumed that the rules of Evidence apply in termination proceedings" without noting that our assumption in those cases was made solely for the sake of addressing a particular related argument. As the applicability of the Rules to termination proceedings was not raised or questioned by any party in either of the two cases, our assumption raises no valid inference regarding a substantive determination as to the applicability of the Rules. The respondent's argument ignores our words of limitation in each case. *See In re Shannon M.*, 146 N.H. at 28 ("we assume, without deciding"); *In re Brittany L.*, 144 N.H. at 144 ("for the purpose of this appeal, we assume"). We agree with the characterization of the probate court that we did not confront the question of the applicability of the Rules in either case.

Next, the respondent argues that the Rules apply to termination proceedings because such proceedings are not explicitly exempt under Rule 1101 and because RSA 170-C:10 is not inconsistent with the Rules. Rule 100 states, in pertinent part: "These rules shall govern all cases the trial of which commences on or after July 1, 1985, *and shall be effective to the extent they are not inconsistent with statutory law in effect on that date ....*" N.H. R. Ev. 100 (emphasis added). RSA 170-C:10, effective August 31, 1973, nearly twelve years prior to the effective date of the Rules, provides that relevant and material information *of any nature* may be admitted into evidence and relied upon to the extent of its probative value.

While the respondent is correct in arguing that termination proceedings are not included in the proceedings excepted under Rule 1101, *see* N.H. R. Ev. 1101(d)(3), her argument fails to acknowledge the prior effective date of RSA 170-C:10. Since the legislature had already established the standard for admission of evidence in termination proceedings through RSA 170-C:10, it was not necessary to include termination proceedings as an exception to Rule 1101 when the Rules were adopted in 1985. Thus, Rule 1101 is not implicated in this case. Furthermore, to the extent that the Rules provide for various limitations on the scope of admissibility of relevant evidence, they are not consistent with the scope or admissibility set forth in RSA 170-C:10, which, in this case, takes precedence. *See* N.H. R. Ev. 100.

The respondent also argues that because parental rights are fundamental rights, the Rules should apply in termination proceedings. Specifically, she notes that the Rules apply in criminal trials (which carry a potential penalty of the loss of freedom for the defendant) and that this court has acknowledged that the loss of one's child may be a harsher penalty than the loss of one's freedom. She concludes, therefore, that the Rules are even more important in a termination proceeding than in a criminal trial. We disagree.

■ We have recognized that the loss of one's children can be viewed as a sanction more severe than imprisonment. *State v. Robert H.*, 118 N.H. 713, 716 (1978), *overruled on other grounds by In re Craig T*, 147 N.H. 739, 744-45 (2002). We have also recognized that parental rights are natural, essential and inherent rights within the meaning of our State Constitution. *In re Baby K.*, 143 N.H. 201, 205 (1998). Given the severity of the termination sanction, and the significance of the parental interest, we have held that to terminate parental rights, "due process requires proof beyond a reasonable doubt, the same burden of proof required for a criminal conviction and incarceration." *Id. But cf.* RSA 170-C:10 (requiring only "clear and convincing evidence"). Accordingly, since the higher burden of proof provides increased protection to the parent in a termination proceeding, application of the Rules is not necessary to provide that protection. Whether that burden of proof is satisfied does not necessarily implicate the Rules. We hold that the probate court did not err as a matter of law by admitting relevant and material evidence in this termination proceeding under RSA 170-C:10, even if the same evidence would have been inadmissible under the Rules.

Next, the respondent contends that the probate court erred in admitting reports previously filed in the district court by DCYF. In light of our holding above, we need not determine whether the DCYF reports were admissible under the Rules. At issue were several reports. The first (exhibit 2) was an affidavit, dated July 29, 1998, which had been included in the State's petition for abuse or neglect against the respondent. The affidavit was subscribed and sworn to by Monica Pellegrino, a child protective service worker in the Keene district office of DCYF. Patricia Grover, a DCYF social worker supervisor in the Keene district office since 1991, testified in the probate court as to what was found in the affidavit. The respondent objected to Grover's testimony because she was not the author of the affidavit and because of an inability to cross-examine Pellegrino concerning the reliability of the affidavit. Counsel for DCYF countered that Pellegrino was unavailable to testify as she had left the employ of DCYF, was no longer residing in New Hampshire, and was out

of the country on an extended trip. Further, he argued that the affidavit was reliable since it was incorporated into the September 15, 1998 adjudicatory order finding child neglect against the respondent pursuant to RSA chapter 169-C. The probate judge found that Pellegrino was unavailable to testify, that the affidavit was "relevant and material" and that it fell into the category of "reports, studies, examinations" for the purpose of RSA 170-C:10.

Also at issue were reports dated March 30, 1999 (exhibit 6), October 6, 1999 (exhibit 9), and April 26, 2000 (exhibit 14), authored by Kendra Cook, a child protective service worker in the Keene district office of DCYF, and signed by both Cook and Patricia Grover. Grover supervised Cook from the time of the latter's assignment to Noah W.'s case. The reports presented the case history, current circumstances and recommendations to the district court. The respondent objected to the reports and Grover's testimony concerning them on the basis of hearsay and her inability to cross-examine Cook. Counsel for DCYF countered that Cook was unavailable to testify that day or the next because she had undergone surgery the previous day. The probate judge found that Cook was unavailable to testify, and that the information was "relevant and material."

The admissibility of evidence is committed to the sound discretion of the trial judge, and such a ruling will not be disturbed on appeal unless there has been an unsustainable exercise of discretion. *In re Antonio W.*, 147 N.H. at 414. The probate court found that both Pellegrino and Cook were unavailable to testify, the former due to an extended stay out of the country and the latter due to her surgery the previous day. The probate court found that the testimony presented by DCYF witnesses at the termination hearing "essentially confirmed the events as disclosed by the District Court record." Based upon our review of the record before us, we agree. In addition, Grover testified from personal knowledge regarding portions of the affidavit. With regard to her testimony concerning the DCYF reports authored by Cook, Grover supervised Cook over the course of their involvement with Noah W.'s case. Grover testified that "not only do I review every report, but I make changes, add to it, go through the recommendations. Anything that goes into court with my name on it has been carefully reviewed by me before that happens." Finally, the record is clear that the probate judge was acutely aware of the need to critically assess the weight to be afforded all testimony and evidence admitted under the standard of RSA 170-C:10. The evaluation of witness credibility is within the probate court's sound discretion and we accord considerable weight to the probate court's judgments on the credibility of witnesses and the weight to be given testimony. *In re Brittany L.*, 144 N.H. at 143.

██ ██ Evidence forming the basis for termination of parental rights shall be admitted when it complies with the statutory safeguards of RSA 170-C:10. *In re Kristopher B.*, 125 N.H. 678, 683 (1984). Here, the probate court found that the information in exhibits 2, 6, 9 and 14 was "relevant and material" and that the authors of the exhibits were unavailable to testify. The probate judge carefully assessed the weight to be afforded the affidavit and reports. As such, the admission of the evidence complied with the statutory safeguards of RSA 170-C:10. Examining the issue within the context of our previous holding, we find no unsustainable exercise of discretion in the probate judge's rulings to admit exhibits 2, 6, 9 and 14. ·

██ Finally, the respondent has inartfully cobbled together a claim that her constitutional due process rights have been violated in that much of the information contained in exhibits 2, 6, 9 and 14 was "unreliable double and triple hearsay"; that it was fundamentally unfair and prejudicial; and that she "could not defend herself with effective cross examination of the people who allegedly made statements against her." The State argues that the respondent failed to preserve a constitutional due process claim. We agree with the State that the respondent has not preserved a due process claim under our State Constitution, *see State v. Dellorfano*, 128 N.H. 628, 632 (1986), but we find that she has sufficiently preserved a federal constitutional claim that she was deprived of her "fundamental right to be a parent." We do not, however, need to examine whether the respondent's rights under the Confrontation Clause of the Sixth Amendment of the Federal Constitution or Part I, Article 15 of the State Constitution were violated here. The Sixth Amendment is expressly limited to criminal defendants. *In re Brittany L.*, 144 N.H. at 142. Because an action to terminate parental rights is a civil proceeding, the Sixth Amendment confers no right of confrontation on the respondent. *Id.* Whether the Confrontation Clause of Part I, Article 15 applies to civil actions has not been decided by this court. As the respondent has not addressed this question in her brief, we need not decide the question now. *Id.*

██ This court has recognized that the family and the rights of parents over it are fundamental and inherent within the Federal and our own State Constitution. *In re Fay G.*, 120 N.H. 153, 156 (1980). To determine whether the statutory safeguards of RSA 170-C:10 satisfy the due process requirements of the Federal Constitution in this case, we employ a three-prong balancing test. We consider: 1) the private interest affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, considering the function involved and the fiscal and administrative

burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also In re Brittany S.*, 147 N.H. 489, 491 (2002).

RSA chapter 170-C was enacted to provide for the involuntary termination of the parent-child relationship by a judicial process, which will safeguard the rights and interests of all parties. RSA 170-C:1; *Robert H.*, 118 N.H. at 715. Consequently, in balancing the private interest involved, we consider the interest of both the respondent and the child to determine what process is due. *See In re Tracy M.*, 137 N.H. 119, 123 (1993). We are mindful, however, that the dominant consideration of the court in a termination proceeding is the welfare of the child, which must prevail over conflicting interests of the parent. *In re Diana P.*, 120 N.H. 791, 798-99 (1980), *cert. denied*, 452 U.S. 964 (1981), *overruled on other grounds by In re Craig T.*, 147 N.H. at 744-45.

With regard to the second prong, the risk of an erroneous deprivation of the respondent's parental interest is low. Because of the significance of the parent's interest at stake in a termination proceeding, due process requires proof beyond a reasonable doubt to terminate the parent's rights. *In re Baby K.*, 143 N.H. at 205. Here, the probate court used this paramount standard of proof in finding the statutory ground for termination of the respondent's parental rights. The probable value of additional or substitute procedural safeguards is also low. RSA 170-C:10 provides that termination proceedings shall be heard by the probate judge sitting without a jury and conducted in an informal manner. A hearing before a judge without a jury is "a circumstance that normally relaxes the strict rules of proof and allows the judge to evaluate evidence without straining it through a fine technical sieve." *State v. Hesse*, 117 N.H. 329, 333 (1977) (quotation omitted). In this case, the indicia of reliability regarding exhibits 2, 6, 9 and 14, detailed above, provided sufficient safeguards against the risk of an erroneous deprivation of the respondent's parental interest. Our review of the record indicates that the probate court carefully assessed both the reliability and the credibility of the admitted testimony and evidence, and the weight to be afforded to them.

Finally, we examine the government's interest. The State has a significant interest in protecting the best interest of Noah W. *See In re Brittany S.*, 147 N.H. at 493. "Parental rights are not absolute, but are subordinate to the State's *parens patriae* power, and must yield to the welfare of the child." *In re Tracy M.*, 137 N.H. at 124 (quotations and brackets omitted). In addition, the fiscal and administrative burdens would be substantial in this case if additional or substitute procedural requirements were mandated. Here, the exhibits at issue were produced over a nearly two-year period and included information from a number of

sources. Some of the individuals involved are no longer employed by DCYF or by the other service providers cited in the exhibits. The time, effort and expense of finding these individuals, summoning them to the courthouse and hearing their individual testimony in this termination proceeding would prove costly, not only for the State and the respondent, but especially for the best interest of Noah W.

 Based upon our analysis of the three-prong balancing test, we hold that the admission of evidence in this case under the statutory safeguards of RSA 170-C:10 did not violate the respondent's due process rights under the Federal Constitution.

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.