IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| IAN HARRIS,[1] | § |
| | § No. 428, 2024 |
| Petitioner Below, | § |
| Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
| v. | § |
| | § File No.        CK19-03100 |
| KARA TUCKER, | § Petition Nos.  22-23928, |
| | § 23-05297 |
| Respondent Below, | § |
| Appellee. | § |

Submitted: April 30, 2025
Decided:   May 22, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    In this appeal, a father contends that the Family Court prematurely closed the record and thereby failed to give him a full and fair opportunity to present evidence during a custody modification hearing.  At the hearing, the Family Court judge stated: "I understand there's been a question raised about how late we're going

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

to go today.  4:15 [p.m.]"[2]  Promptly at 4:15 p.m., the Family Court ended the hearing while the father's attorney was conducting cross examination of the mother.  Less than two weeks later, the parties filed a joint letter requesting additional hearing time, but the Family Court later denied that request off the record during a conference in a different case where both attorneys were present.  The Family Court then issued an order denying the father's petition for custody modification.  Father now appeals, contending that the Family Court abused its discretion and violated his due process rights by prematurely cutting off the record.  We agree and remand this matter for further proceedings.

(2)     Petitioner below, appellant Ian Harris ("Father") and respondent below, appellee Kara Tucker ("Mother") are the parents of their minor child ("Child").[3]  In October 2020, after a hearing on the merits, the Family Court entered a custody order concerning Child.  In March 2023, Father filed a petition to modify the custody order, seeking joint custody and placement of Child.[4]  Father contends that he sought custody modification after viewing a picture on social media of a man drinking liquor in the presence of Child.  Father also expressed concerns regarding Child's

---

[2] App. to Answering Br. at B29.  We cannot approximate at what time the court notified the parties of the 4:15 p.m. stopping time.  For context, the quote above appears on page 217 of the hearing transcript, and the Family Court ended the hearing at 4:15 p.m. on page 282 of the transcript.

[3] We take the facts from the Family Court's order below unless otherwise noted.  *See* Ex. to Opening Br. [hereinafter *Family Court Order*].

[4] And in October 2022, Father filed a petition – rule to show cause against Mother concerning the custody order.

2

speech development. Mother responded to Father's custody modification petition and also filed a petition for protection from abuse against Father.[5] Father countered with his own petition for protection from abuse. After a hearing, the Family Court denied both protection-from-abuse petitions. In May 2024, the parties stipulated to an interim custody order while Father's custody modification petition was pending.

(3) In July 2024, the Family Court held a hearing on Father's custody modification petition.[6] Regarding timing, the Family Court's notice of scheduled hearing, which was sent to each party's attorney, stated: "This hearing has been allotted 7 hours."[7] During the hearing, the Family Court judge stated: "I understand there's been a question raised about how late we're going to go today. 4:15 [p.m.]"[8] During Father's attorney's cross examination of Mother, the Family Court ended the hearing mid-question because it was 4:15 p.m.[9] Less than two weeks later, the parties filed a joint letter with the Family Court requesting an additional 2.5 hours to present evidence.[10] The letter stated that the parties requested this time to

---

[5] Mother also responded to the petition – rule to show cause.

[6] The parties also presented evidence on Father's petition – rule to show cause.

[7] App. to Opening Br. at A8, A10 (Notice of Scheduled Hearing).

[8] App. to Answering Br. at B29.

[9] App. to Opening Br. at A17 (The Court: "Okay, folks. It's 4:15. Thank you very much.").

[10] *Id.* at A19 (Joint Letter).

complete cross examination and redirect of Mother.[11]  Mother also planned to call her boyfriend to testify, and Father planned to present rebuttal evidence.[12]

(4)    According to both parties, the Family Court denied the parties' request for additional time while the court and counsel were concluding a teleconference in a different case.[13]  There is no record of this ruling.  In September 2024, the Family Court issued its order on Father's custody modification petition.  The court considered the best interests factors in 13 *Del. C.* § 722 and determined that the factors either favored Mother or were neutral.[14]  The Family Court denied Father's

---

[11] *Id.*

[12] *Id.*

[13] Opening Br. at 10 ("Both counsel of record are also opposing counsel for a different and separate matter in which [the court] held a teleconference on July 31, 2024.  Family Court Judge asked counsel for Father and Mother to stay on the call after other counsel left the teleconference call, and Family Court Judge indicated that he would rule on the counsel's Joint Letter request.  At this *sua sponte* teleconference, Family Court Judge indicated that it was being handled 'off the record' and that the Judge was denying the relief requested in the Joint Letter."); Answering Br. at 4 ("During a teleconference in another matter, the Court advised counsel that the request was denied and there would be no additional hearing for the matter.").

[14] The court found that, of Section 722(a)'s enumerated factors, factors one, four, six, seven, and eight favored Mother, and factors two, three, and five were neutral.  For factor one, the court found that Child lives with Mother and is making satisfactory progress there.  For factor two, no evidence was submitted regarding Child's wishes.  For factor three, the court found that Child has good relationships with both parents' households.  For factor four, the court found that Child has adjusted well to the daycare that Mother favors.  For factor five, the court found that Child had a history of breathing issues; Mother participates in therapy for her mental health; and Father denied any personal health issues.  For factor six, the court found Father's testimony regarding Mother's alleged failure to honor visitation agreements to be "suspect."  For factor seven, the court found that Father previously committed acts of domestic violence against Mother as defined in 10 *Del. C.* § 1041.  For factor eight, the court found that Father had pled guilty to a criminal charge arising from the acts discussed in factor seven.

custody modification petition and vested Mother with primary residential placement.[15]

(5) Father now appeals, contending that the Family Court abused its discretion and violated his due process rights by prematurely closing the record, which resulted in clearly erroneous factual findings that are not supported by the record. Mother responds that the Family Court did not abuse its discretion by limiting the record and that its findings are supported by the record.

(6) On appeal of a Family Court order denying a petition to modify a custody order, "we review both the facts and the law, as well as the trial judge's inferences and deductions."[16] We conduct a limited review of the factual findings "to ensure they are supported by the record and are not clearly erroneous. We do not disturb findings of fact unless they are clearly wrong and justice requires that we do so."[17] We review issues of law and legal conclusions *de novo*.[18] "If the Family Court has properly applied the law to the facts, then the standard of review is abuse of discretion."[19] We review constitutional claims *de novo*.[20]

---

[15] The court held that certain provisions of the interim order now constitute the final custody order. The court also denied Father's petition – rule to show cause.

[16] *Mitchell v. Thayer*, 312 A.3d 693, 698 (Del. 2024); *see also Ward v. Taylor*, 314 A.3d 662, 2024 WL 659239, at *3 (Del. Feb. 14, 2024) (TABLE).

[17] *Mitchell*, 312 A.3d at 698–99 (citation omitted).

[18] *Id.* at 699.

[19] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[20] *Ralston v. Div. of Servs. for Child., Youth and their Fams.*, 308 A.3d 149, 159 (Del. 2023).

(7)     In his opening brief, Father argues that the Family Court abused its discretion by limiting the record and not permitting Father to finish presenting material evidence.[21]  In his reply brief, Father maintains that same argument but also asserts that the court violated his due process rights by cutting off cross examination of Mother.[22]  Although Supreme Court Rule 14 provides that we do not consider arguments raised for the first time in a reply brief,[23] the due process argument raised in the reply brief overlaps substantially with the abuse of discretion argument raised in the opening brief.[24]  We therefore consider both arguments presented by Father.

(8)     Both the United States Supreme Court and this Court have recognized that parents have a fundamental liberty interest "in maintaining a relationship with his or her child."[25]  Parents must be afforded procedural and substantive due process when parental rights are at stake.[26]  Due process "imposes on the States the standards

---

[21] Opening Br. at 4–5.

[22] Reply Br. at 3.

[23] Del. Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

[24] *Compare* Opening Br. at 7–8 ("Father's counsel was not afforded the opportunity to complete the cross-examination of Mother . . . .  Accordingly, the trial judge denied Father's right to be heard[.]"), *with* Reply Br. at 3 ("Appellant's counsel argues that cross-examination of a witness is a fundamental due process right.  The Courts in Delaware have held that a due process violation occurs when the Court limits a litigant's ability to cross-examination in such a way that it materially impacts their ability to challenge testimony.").

[25] *George v. Dep't of Servs. for Child., Youth and their Fams.*, 150 A.3d 768, 2016 WL 6302525, at *3 (Del. Oct. 27, 2016) (TABLE) (citing *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)).

[26] *Id.* (citing *Orville v. Div. of Fam. Servs.*, 759 A.2d 595, 598 (Del. 2000)).

necessary to ensure that judicial proceedings are fundamentally fair."[27] It "entails providing the parties with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends."[28]

(9) In *George v. Department of Services for Children, Youth and their Families*, this Court held that a mother's due process rights were not violated when she "had every incentive and opportunity to present her arguments[.]"[29] The court in *George* did not limit the evidence and provided the mother with a "full and fair opportunity" to conduct cross examination and present evidence opposing termination of her parental rights.[30]

(10) Here, the Family Court did not provide Father a full and fair opportunity to cross examine Mother or present rebuttal evidence. The court, however, afforded Mother the opportunity to cross examine and recross examine Father. Due process requires "providing the parties with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact

---

[27] *Orville*, 759 A.2d at 598 (quoting *Allen v. Div. of Child Support Enf't ex rel. Ware*, 575 A.2d 1176, 1178 (Del. 1990)).

[28] *Vincent v. Eastern Shore Mkts.*, 970 A.2d 160, 164 (Del. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[29] *George*, 2016 WL 6302525, at *3.

[30] *Id.*

which bears on the question of right in the matter[.]"[31] By cutting off Father's cross examination of Mother, the Family Court did not provide Father an opportunity to be heard on every material fact bearing on the custody of Child. Instead, the court limited Father's ability to elicit testimony from Mother and introduce his own evidence. Thus, the court decided Father's custody modification petition on an underdeveloped record.

(11) In *U.J. v. A.A.*, a father moved for a new trial and argued that the Family Court arbitrarily limited the record by limiting his time at trial.[32] Before trial, the court informed the parties that the trial would last one day and each party would have one-half of the allotted time.[33] Following opening statements, the court again reminded the parties that there would not be another day of trial.[34] Further, the court provided time updates throughout the trial.[35] Importantly, neither party requested additional time. The Family Court denied the father's motion for a new trial, noting that his counsel fully examined all witnesses, "including calling [the mother] first in his case-in-chief."[36]

---

[31] *Eastern Shore Mkts.*, 970 A.2d at 164.

[32] *U.J. v. A.A.*, 2024 WL 4432736, at *3 (Del. Fam. Ct. Aug. 19, 2024).

[33] *Id.*

[34] *Id.* at *4.

[35] *Id.*

[36] *Id.* at *5.

(12) Here, the Family Court's notice of scheduled hearing stated that the "*hearing* has been allotted 7 hours."[37] The Family Court did not inform the parties that the seven-hour allotment would be the only hearing day and that it would not entertain requests for additional time. More concerning, the court did not allot each party equal time. And unlike the father in *U.J.*, Father did not complete cross examination of Mother, whose testimony was no doubt material to Father's petition. Further, when the parties jointly requested more time at the court's convenience, the court denied that request off the record. Without a record, we do not know the court's reasoning for denying the parties' joint request to, at least, complete Mother's testimony.[38]

(13) We cannot conclude that the Family Court's factual findings are not clearly erroneous when those findings are based on an underdeveloped record. For example, in addition to not completing Mother's testimony, Father was not provided an opportunity elicit testimony regarding Child's medical records to rebut Mother's testimony regarding Child's speech development.[39]

---

[37] App. to Opening Br. at A8, A10 (Notice of Scheduled Hearing) (emphasis added).

[38] Family Court Rule of Civil Procedure Rule 42.2(e) provides that "[a]ll sidebar conferences and chambers conferences during trial shall be recorded unless the judicial officer determines, in advance, that neither evidentiary nor substantive issues are involved." The court's denial of the parties' joint request did not occur during trial, but it concerned trial. Further, the request concerned evidentiary issues related to testimony. The court therefore did not abide by Family Court Civil Rule 42.2.

[39] The parties discuss this "medical records" issue substantially in their briefs. In his opening brief, Father contends that the court made an erroneous finding when it stated that Father "asserted that the child's primary care physician recommended speech therapy. That fact is not in the record of

(14) As further confirmation that the Family Court abused its discretion, it failed to exercise reasonable control over the presentation of evidence. Delaware Rule of Evidence Rule 611(a) provides that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) Make those procedures effective for determining the truth[.]" Mother had the full opportunity to cross examine Father, but Father was not afforded the same opportunity. Permitting the parties to complete Mother's testimony, including permitting Father to complete cross examination of Mother, would appear to be an effective—and necessary—procedure for determining the truth.

(15) Whether framed as a due process violation or an abuse of discretion, the Family Court erred in deciding Father's custody modification petition on an incomplete evidentiary record. Accordingly, we remand this matter to the Family Court to permit the parties to present the evidence requested in their joint letter. The Family Court should then reevaluate Father's custody modification petition on a complete evidentiary record.[40]

---

this case." Opening Br. at 13 (quoting *Family Court Order* at 2). Father points to notes from a Nemours care provider, although not the primary care physician, stating that Child is "in need of SP [speech] eval[uation]." App to Opening Br. at A33. The next page of the Nemours notes state that "[h]earing is judged to be adequate for speech and language development and communication abilities at this time" but "fluctuating hearing loss secondary to recurrent otitis media may affect the normal development of speech and language skills." *Id.* at A34. Mother responds that the notes that Father points to are not by Child's primary care physician; instead, they are authored by another provider and the notes suggest that Child's speech is adequate. Answering Br. at 7–8. At this time, we do not opine on the substance of the medical record evidence.

[40] The Family Court should also reevaluate Father's petition – rule to show cause.

10

NOW, THEREFORE, IT IS ORDERED that this matter is REMANDED to the Family Court for further proceedings consistent with this order. Jurisdiction is not retained.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice