# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KRISTOPHER BROWN, | ) | |
| | ) | C.A. No. K20A-04-002 NEP |
| Appellant, | ) | In and for Kent County |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE BOARD OF | ) | |
| EXAMINERS OF NURSING | ) | |
| HOME ADMINISTRATORS, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: December 10, 2020
Decided: January 15, 2021

## OPINION AND ORDER

*Upon Appellant's Appeal from the Decision of the Delaware Board of Examiners of Nursing Home Administrators*

**REVERSED** and **REMANDED**

Kaan Ekiner, Esquire, Whiteford Taylor Preston LLC, Wilmington, Delaware, *Attorney for Appellant.*

Kevin P. Maloney, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for Appellee.*

**Primos, J.**

Before the Court is the appeal of the November 12, 2019, Order and the March 10, 2020, Supplemental Order on Motion for Reconsideration (collectively, the "Orders") of the Delaware Board of Examiners of Nursing Home Administrators (the "Board") in the matter of Kristopher Brown ("Brown"). The Orders denied approval of Brown's Administrator-in-Training ("AIT") application (the "Application"). An extensive review of the record shows that the Board committed legal error, abused its discretion, and did not support its decision by substantial evidence. Therefore, the Board's decision is **REVERSED** and **REMANDED** for the reasons explained in this Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2017, Brown was approved by the Board to complete a six-month AIT program. Successful completion of the AIT program is a prerequisite for obtaining a Delaware nursing home administrator license.

To complete the program, an applicant must submit AIT progress reports "every three (3) months for the duration of the AIT program."[1] On July 10, 2018, the Board proposed to withhold approval of the Application for Brown's failure to submit his progress reports in three-month intervals. In a July 18, 2018, letter, Brown was notified of the Board's proposal to deny his Application.[2]

At a September 11, 2018, Board meeting, Brown disputed the proposal to deny his Application and requested a hearing shortly thereafter. Nearly a year later, due to delay caused by a fraud investigation that ultimately revealed that no fraud had been committed in connection with the Application, the Board held a hearing on September 10, 2019. At that hearing, Brown appeared *pro se* and provided sworn

---

[1] 24 Del. Admin. C. § 5200-3.1; *see also* 24 *Del. C.* § 5210(c) (requiring the submission of progress reports as part of the AIT program).

[2] Rec. Tab 19 at p. 5; In the Matter of: Kristopher Brown, Board Order (Delaware Bd. of Nursing Home Adm'rs. Nov. 12, 2019) (hereinafter, "Board Order of Nov. 12, 2019") (Rec. Tab 1), at p. 1.

testimony that he had timely submitted his first set of progress reports by certified mail in December 2017, although he had no receipt evidencing delivery.[3] He also testified that he had submitted the second set of progress reports in a timely manner: although Brown finished the AIT program in March of 2018, he was advised by a Division of Professional Regulation ("DPR") representative to wait until he completed a 120-hour nursing home administrator course, an additional requirement separate from the AIT program, before submitting his final set of progress reports.[4] According to Brown, he did so in July 2018.[5]

In its November 12, 2019, Order, the Board found "as a matter of fact, based upon its review of the record, that Mr. Brown did complete an AIT program under the supervision of a Board approved preceptor."[6] However, "as a matter of law[,] . . . the evidence presented by Mr. Brown [was] not sufficient to approve him for licensure contingent upon his achieving a passing score on the required examination because he failed to timely submit the required AIT progress reports."[7]

The Board held a second hearing on January 14, 2020, following Brown's submission of a Motion for Reconsideration.[8] At that hearing, Brown was represented by counsel. Brown's Motion for Reconsideration was effectively denied in a March 10, 2020, supplemental order in which the Board affirmed its November 12, 2019, decision.[9] This appeal followed.

---

[3] Rec. Tab 3 at p. 16, l. 19 through p.17, l. 7; Rec. Tab 3 at p. 25, ll. 12-15. At a later hearing on Brown's Motion for Reconsideration, he testified that he had sent his first set of progress reports by regular mail, not certified mail. Rec. Tab 4 at p. 13, l. 21 through p. 14, l. 2.

[4] Rec. Tab 3 at p. 25, l. 22 through p. 26, l. 5.

[5] Rec. Tab 3 at p. 26, ll. 13-14.

[6] Board Order of Nov. 12, 2019 (Rec. Tab 1), at p. 3.

[7] *Id.*

[8] Rec. Tab 4.

[9] In the Matter of Kristopher Brown, Supplemental Bd. Ord. on Mot. for Reconsideration (Delaware Bd. of Nursing Home Adm'rs. Mar. 10, 2020) (hereinafter, "Supplemental Board Order of Mar. 10, 2020") (Rec. Tab 2), at p. 2.

## II. THE PARTIES' CONTENTIONS

Brown contends that his due process rights were violated because there was a year-long gap between Brown's request for a hearing and the date when a hearing was held, because he never received notice of his right to appeal the Board's denial of the Application, because the Board filed a certified copy of the proceedings below 70 days after this Court's deadline, and because the delay in granting him a license has deprived him of two years' time away from his desired profession. Moreover, he argues that the Board committed both factual and legal errors. Specifically, Brown asserts that the Board's conclusion that he failed to submit his AIT progress reports in a timely manner is not supported by substantial evidence, and that the Board erred by failing to give the evidence of record the proper weight. Finally, Brown asserts that the Orders have resulted in manifest injustice and that the Court should direct the Board to allow him to rectify the deficiencies in the Application.

The Board argues that Brown's due process rights were not violated because he was afforded two hearings, because he contributed to the delay in the submission of his Application, because the late filing in this Court of the record below did not violate Brown's right to a fair administrative hearing, and because his delayed employment opportunity is a collateral consequence of his failure to submit the required AIT progress reports in a timely fashion. The Board contends that the decision to deny Brown's Application was proper because he failed to comply with Board Regulation 3.1 (24 Del. Admin. C. § 5200-3.1) and with 24 *Del. C.* § 5210(c).[10] Lastly, the Board argues that ordering it to allow Brown to correct deficiencies in his application would be futile because there is no way to rectify his late submission of AIT progress reports.

---

[10] *See supra* note 1 and accompanying text.

## III. STANDARD OF REVIEW

When an administrative board's decision is appealed, this Court is limited to reviewing whether the board's decision is supported by substantial evidence and free from legal errors.[11] "Substantial evidence is that 'which a reasonable mind might accept as adequate to support a conclusion.'"[12] "The 'substantial evidence' standard of review of decisions from administrative agencies requires the reviewing court to search the entire record to determine whether, on the basis of all of the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[13] A board abuses its discretion where it "exceed[s] the bounds of reason in view of the circumstances" or "ignore[s] recognized rules of law or practice [] so as to produce injustice."[14]

The Court reviews questions of law *de novo*.[15] Unless the board erred as a matter of law, did not support its decision by substantial evidence, or abused its discretion, the Court will uphold the board's decision.[16]

## IV. DISCUSSION

### A. The Court will not decide the due process issue because it will decide the case on other grounds.

As noted *supra*, Brown argues that the Board violated his due process rights in multiple ways, including, but not limited to, delaying his right to a hearing. The

---

[11] *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012) (citing 29 *Del. C.* § 10142(d) (providing that, absent fraud, this Court reviews an agency's decision to determine whether it was supported by substantial evidence on the record before the agency) and *Avon Prods. v. Lamparski*, 293 A.2d 559, 560 (Del. 1972)).

[12] *Id.* (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super.1981) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966))).

[13] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980) (citing *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1092-93 (Me. 1978)).

[14] *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954).

[15] *Eckeard*, 2012 WL 5355628, at *2 (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).

[16] *Id.* (citing *Carrion v. City of Wilmington*, 2006 WL 3502092, at *3 (Del. Super. Dec. 5, 2006)).

5

due process clause is rooted in the Fourteenth Amendment to the United States Constitution.[17]

The Delaware Supreme Court has stated that courts should not reach constitutional questions when a case can be decided on other grounds. In *Culver v. State*, the Court did not reach any constitutional questions because it found that probation officers had violated a statutory mandate.[18] Similarly, in *Keeler v. Metal Masters Foodservice Equipment Co.*, the Court found that, because the claimant had not met his burden of proof under the displaced worker doctrine, the Court need not reach the constitutional issue of whether the doctrine violated the claimant's substantive due process rights.[19] As the Court explained, it would "refrain from deciding constitutional questions unless a decision can be reached on no other grounds."[20] The Court quoted *Wheatley v. State*, which stated the cardinal rule: "constitutional questions will not be decided unless essential to the disposition of the case."[21] Keeping with that cardinal principle, this Court will not decide the due process issues raised by Brown and will instead render its decision based on the non-constitutional grounds discussed below.

### B. The Board committed legal error, abused its discretion, and did not support its decision by substantial evidence.

The Board committed legal error by making its decision on the basis that Brown "provided no evidence, other than his testimony,"[22] and it abused its discretion by not accepting his testimony as competent, substantive evidence. No

---

[17] *See Orville v. Div. of Family Servs.*, 759 A.2d 595, 597-98 (Del. 2000) ("A party is entitled to due process prior to the termination of a right protected by the Fourteenth Amendment to the United States Constitution.").

[18] *Culver v. State*, 956 A.2d 5, 7 n.1 (Del. 2008) (citing *Downs v. Jacobs*, 272 A.2d 706, 707 (Del. 1970)).

[19] *Keeler v. Metal Masters Foodservice Equip. Co.*, 712 A.2d 1004, 1005-06 (Del. 1998).

[20] *Id.* at 1006.

[21] *Wheatley v. State*, 465 A.2d 1110, 1111 (Del. 1983).

[22] Board Order of Nov. 12, 2019 (Rec. Tab 1), at p. 3.

6

competent evidence was before the Board to support its finding that Brown had not timely submitted the required progress reports.

**1. The Board committed legal error and abused its discretion because it based its decision on the fact that Brown provided no evidence other than his own testimony, which is competent evidence that the Board should have accepted as substantive, and because it chose to include unsworn testimony as evidence of record.**

"When the only evidence upon which [an administrative board] bases its decision . . . is based on speculation and possibilities, the Court should reverse the finding of the [administrative board] on the ground that there is no competent evidence to support it."[23] An administrative board may not rely upon speculation or assumption, but instead must base its decision on competent evidence.[24] Furthermore, "the agency's decision must be based on evidence that is not only substantial, but also substantive, that is, supported by more than negative inference."[25]

If sworn, testimony is competent evidence and, without contrary or conflicting competent evidence, an adjudicator must base its decision on that evidence.[26] Any testimony relied upon in reaching an administrative decision must be sworn and subjected to cross-examination.[27]

Here, the Board concluded as a matter of *fact* that Brown had completed the AIT program.[28] However, the Board concluded as a matter of *law* that the evidence

---

[23] *Briscoe v. Gen. Motors Corp.*, 1989 WL 112011, at *4 (Del. Super. Sept. 8, 1989).

[24] *Id.*

[25] *Marsh v. Delaware Racing Comm'n*, 1991 WL 138377, at *1 (Del. Super. July 10, 1991), *rev'd on other grounds, Delaware Harness Racing Comm'n v. Marsh*, 608 A.2d 726 (Del. 1992).

[26] *See Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1055 (Del. Super. 2001) (granting summary judgment to a party because it was the only party to offer the competent evidence of sworn testimony).

[27] *Blue Cross & Blue Shield of Delaware, Inc. v. Elliott*, 479 A.2d 843, 851 (Del. Super. 1984).

[28] Board Order of Nov. 12, 2019 (Rec. Tab 1), at p. 3.

presented by Brown was not sufficient to approve him for licensure contingent upon achieving a passing score on the additionally-required examination because he had failed to submit the required AIT progress reports in a timely manner.[29] The Board based its legal conclusion on that fact that Brown "provided no evidence, other than his testimony."[30] However, as noted *supra*, sworn testimony is competent evidence, including at any administrative hearing, and therefore this legal conclusion on the part of the Board is itself erroneous.[31] Moreover, the Board's determination that Brown's testimony was somehow deficient as evidence, *i.e.*, that it was not competent, is a legal conclusion that this Court may, and will, review *de novo*.[32]

Furthermore, in rendering its decision, the Board pointed to no competent evidence to support its conclusion. Instead of accepting Brown's sworn testimony, the Board abused its discretion and made a negative inference that Brown had not timely submitted the required AIT progress reports—*i.e.*, the Board did not base its decision on the evidence of record.

On appeal from an administrative board, this Court does not determine questions of credibility; rather, credibility determinations are left to the Board.[33] However, here the Board did not base its decision on the credibility of Brown: indeed, counsel for the Board specifically conceded this at oral argument. Moreover, even if the Board had attempted to make its decision based on the credibility, or lack

---

[29] *Id.*

[30] *Id.*

[31] *See supra* note 26 and accompanying text.

[32] *See Eckeard*, 2012 WL 5355628, at *2 (questions of law are reviewed *de novo*).

[33] *See Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (1965) (in an administrative appeal "the Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions.").

thereof, of Brown's testimony, the Board would nonetheless have needed to base its decision on substantive evidence.[34]

This Court recognizes that Brown was not the only individual to testify at the Board hearing—in fact, the "Summary of the Evidence" section of the November 12, 2019, Board Order lists testimonial allegations provided by Ms. Jennifer Witte, a DPR Administrative Specialist.[35] However, even if the Board wished to credit Ms. Witte's testimony over Brown's testimony, it could not: Ms. Witte's testimony was not sworn, nor was she subjected to cross-examination by Brown.[36] Therefore, her testimony was not competent evidence that could have been relied upon by the Board.[37] Furthermore, the Board committed legal error by including Ms. Witte's testimony in the "Summary of the Evidence" in its November 12, 2019, Order.

Finally, even if Ms. Witte's testimony had been sworn and subjected to cross-examination, she would have needed to have personal knowledge of the matter to testify.[38] Based on her testimony of record, she had no personal knowledge regarding two key areas of Brown's testimony: (1) whether he had submitted his first set of progress reports in December 2017, and (2) whether a DPR representative informed him in March 2018 that he need not submit the second set of progress reports until after he completed the 120-hour course.

The law as applied to this case may have been best summarized in *Eckeard, supra*.[39] In that case, this Court held that, while a board has the authority to use

---

[34] *See supra* note 25 and accompanying text.

[35] Board Order of Nov. 12, 2019 (Rec. Tab 1), at pp. 2-3.

[36] *See* Tab 3 at p. 23, l. 6 *ff.* (Board member asks Ms. Witte a question and, throughout the rest of the hearing, Ms. Witte provides testimony without having been sworn).

[37] The Board's counsel conceded at oral argument that it would likely have been improper for the Board to rely upon Ms. Witte's unsworn testimony. *See supra* note 27 and accompanying text.

[38] *See Lundeen v. Pricewaterhouse Coopers*, 919 A.2d 561 (TABLE), 2007 WL 646205, at *3 (Del. 2007) (finding that this Court properly refused to consider a witness' affidavit because the witness could not testify from personal knowledge about the matter in question).

[39] 2012 WL 5355628.

9

discretion in making factual findings and decisions, the discretion "may not be used to ignore entirely one party's competent testimony and evidence."[40]

Here, the Board entirely ignored the competent testimonial evidence of Brown. Instead, it relied upon, or at least considered as evidence according to its Orders, the unsworn testimony of Ms. Witte. Moreover, it based its decision on the fact that no additional evidence, other than Brown's testimony, existed.[41] As this Court held in *Eckeard*, "if the record indicates that the administrative agency based its decision on improper or inadequate grounds, discretion has been abused and reversal is required."[42] Because the Board abused its discretion in making a negative inference that Brown did not timely submit the required AIT progress reports and considered Ms. Witte's unsworn testimony as evidence, the Board committed legal error.

**2. The Board did not support its finding that Brown did not submit his progress reports in a timely manner with substantial evidence, but instead based its decision on the purported absence of evidence while discounting Brown's testimony.**

The Board reiterated in its Supplemental Order of March 10, 2020, that there was not sufficient evidence as a matter of law to show that Brown had timely submitted the required progress reports.[43] However, Brown testified that he timely submitted the required progress reports, and as mentioned *supra*, this is competent evidence, contrary to the Board's finding.[44]

The Board's decision must be supported by "substantial evidence on the record before the agency."[45] "In order for evidence to be considered 'substantial,' it

---

[40] *Id.* at *6.

[41] Board Order of Nov. 12, 2019 (Rec. Tab 1), at p. 3.

[42] *Eckeard,* 2012 WL 5355628, at *9 (citations omitted).

[43] Supplemental Board Order of Mar. 10, 2020 (Rec. Tab 2), at p. 2.

[44] *See supra* note 26 and accompanying text.

[45] 29 *Del. C.* § 10142(d).

should be sufficient enough to allow a reasonable person to reach a certain conclusion."[46]

Here, there was no competent evidence before the Board establishing that Brown did not timely submit the required first set of progress reports in December 2017. There was also no competent evidence establishing that Brown was not told by a DPR representative in March of 2018 that he could wait to submit his final set of progress reports until after completing the 120-hour required course. Although Board Regulation 3.1 states that the progress reports must be submitted "every three months" during the AIT program, a letter sent by the Board to Mr. Brown on September 14, 2017, states that the first progress reports should not be submitted "before" December 17, 2017, and that the second set of progress reports should not be submitted "before" March 11, 2018, but the letter fails to provide deadlines for submission of the progress reports.[47] Furthermore, the Board's counsel admitted at oral argument that the Board would not have based a denial upon Brown's failure to submit the second set of progress reports in March 2018 if he could have confirmed that the DPR representative had advised him to submit the reports after he had completed the 120-hour course. Lastly, the Board could not properly rely upon the testimony of Ms. Witte that Brown came to the DPR office in May but did not have his progress reports, as Ms. Witte's testimony was unsworn and therefore not competent evidence. The only competent evidence before the Board was Brown's testimony as to the above facts, which supports his position that he timely submitted the required progress reports.

In addition, the Board's decision that Brown did not timely submit his required progress reports is based at least in part upon a factual error: in its

---

[46] *Decker v. Delaware Bd. of Nursing*, 2013 WL 5952103, at *5 (Del. Super. Nov. 7, 2013).

[47] Rec. Tab 19 at p.7.

11

Supplemental Order of March 10, 2020, the Board states that "he [Brown] does not . . . contest the fact that the reports were not timely submitted to the Board."[48] However, a review of the transcripts of the September 10, 2019, and January 14, 2020, hearings shows that Brown testified that he submitted the required reports in a timely manner—in the case of the first set of reports, in December 2017, and in the case of the second set, after the completion of the 120-hour course, as advised by the Board's staff.[49]

## V. CONCLUSION

The Board has committed legal errors, has abused its discretion, and has not supported its decision with substantial evidence; therefore, the Board's Orders warrant reversal by this Court.

**WHEREFORE**, for the foregoing reasons, the Board's Orders are **REVERSED,** and the matter is **REMANDED** to the Board for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

/s/ Noel Eason Primos
Judge

NEP/wjs
*Sent via File & ServeXpress*
oc:   Prothonotary
       Counsel of Record

---

[48] Supplemental Board Order of Mar. 10, 2020 (Rec. Tab 2), at p. 2.

[49] Rec. Tab 3 at p. 16, l. 19 through p. 17, l. 7; Rec. Tab 3 at p. 25, l. 22 through p. 26, l. 14; Rec. Tab 4 at p. 13, l. 16 through p. 14, l. 2; Rec. Tab 4 at p. 14, l. 21 through p. 15, l. 16; Rec. Tab 4 at p. 28, l. 22 through p. 29, l. 3.