NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO B.K.

No. 1 CA-JV 23-0180
FILED 4-18-2024

---

Appeal from the Superior Court in Apache County
No. S0100SV202300001
The Honorable Garrett L. Whiting, Judge, *Pro Tempore*

**VACATED AND REMANDED**

---

COUNSEL

The Rigg Law Firm P.L.L.C., Pinetop
By Brett R. Rigg
*Counsel for Appellant*

Kortney C., St. Johns
*Appellee*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

J A C O B S, Judge:

¶1             Steve Cumings ("Father") appeals the superior court's termination of his parental rights as to B.K. for abandonment under A.R.S. § 8-533(B)(1).  When B.K. turned 16, Kortney C. ("Mother") filed this private termination suit.  Father sought a continuance of the trial date for two or more weeks – past the end of his incarceration – so he could appear and participate in person.  The court denied the continuance.  At trial, Father argued Mother "persistently and substantially restricted" his access to B.K. under *Calvin B. v. Brittany B.*, 232 Ariz. 292, 293-94 ¶ 1 (App. 2013), while Mother contended she did not.  The court found abandonment.  Father appeals, arguing the denial of the brief continuance was an abuse of discretion, and that *Calvin B.* makes the finding of abandonment error.  Mother filed no responsive brief, conceding error as to the procedural issue of the continuance.  We reverse on the first issue and order a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2             Father and Mother are B.K.'s biological parents.  They lived with Mother's parents in St. Johns, Arizona while she was carrying B.K., but Father moved out at some point during the pregnancy.  Mother and Father ended their relationship soon after B.K.'s birth in 2007.  Mother took B.K. to visit Father during her first year, but stopped thereafter because Mother did not want B.K. visiting Father in jail.

**A.     Father Was Not in Contact With B.K., Who Eventually Developed an Interest in Adoption By Her Stepfather.**

¶3             In 2008, Mother met and married Justin C. ("Stepfather") and thereafter moved to Louisiana.  Mother did not notify Father she and B.K. had moved to Louisiana and did not send Father B.K.'s new address.  From 2009 to 2012, Mother did not call Father and Father had no phone number to contact B.K.  Mother would later testify that Father could search for her phone numbers through an online background check.  While B.K. was in Louisiana, Father mailed four letters addressed to her at her maternal

grandparents' post office box, which were forwarded to B.K. in Louisiana. Father did not know if the letters reached B.K.

¶4 In 2015, B.K. moved back to Arizona. Mother did not inform Father that she and B.K. had moved back to Arizona, of a new P.O. box she had, or of her or B.K.'s cell phone number. Mother intended that "[c]onnection [between Father and B.K.] was not going to be made on my efforts." Father called Mother's parents (B.K.'s grandparents) at the only number he had access to, without success.

¶5 B.K. expressed interest in Stepfather adopting her. Mother did not initially pursue the adoption, but began the process in 2019 when B.K. asked again. Mother's lawyer contacted Father in jail, asking him to voluntarily relinquish his parental rights. Father refused. In 2020, Father wrote Mother a letter explaining he wanted to be in B.K.'s life and would do what it took to maintain a relationship. Mother did not respond. Mother stopped pursuing the adoption for three years but resumed it in 2023, when B.K. turned sixteen.

**B.      Mother Sought to Terminate Father's Parental Rights, and the Court Denied Father's Motion to Continue the Hearing Two or More Weeks, to Fall After His Release from Prison.**

¶6 In April 2023, Mother petitioned to terminate Father's parental rights. The court found Father indigent and appointed him counsel. At the pre-trial conference in July 2023, the court granted Father's initial counsel's request to withdraw and appointed new counsel. At this conference, B.K. requested the proceeding move forward without her own counsel attending. The court then notified Father that failure to attend any proceeding could result in waiving his legal rights.

¶7 Father's new counsel moved to continue the hearing because he had only recently received Mother's disclosure. The court found good cause and granted the request to continue and moved the termination hearing from August 9, 2023, to August 29, 2023. Father filed a second motion to continue to postpone the hearing until after September 12, 2023, because he was going to be released from jail that day and wanted to appear at the termination hearing in person. The superior court denied Father's second motion to continue.

**C.      The Superior Court Terminated Father's Parental Rights.**

¶8 At trial, Mother testified Father only sent four letters to B.K. at her parents' post office box while they were in Louisiana and initiated no

communication with B.K. in the three years before the termination. Father testified he intended to start a relationship with B.K. upon being released from jail but had been in and out of jail for most of B.K.'s life. Father was out of state prison from May 2010 to December 2013 and January 2016 to August 2018. Father was in county jail for unstated intervals within these two periods as well, leaving unclear how much time Father was in custody. Father testified he sent more letters than Mother had recounted, likely around a dozen. From 2019 through the hearing, Father claimed to have sent five more letters in addition to the four Mother acknowledged. Father testified Mother prevented him from maintaining a relationship with B.K. by withholding her contact information and whereabouts. Father did not know if B.K. ever received any communication from him. Father did not testify about any affirmative steps he took between 2008 and 2023 to locate B.K. or Mother.

**¶9**        At the hearing, Father repeatedly expressed frustration because he could not hear the testimony. At several points Father expressed that the connection with the court kept cutting in and out but the court continued without the prior testimony being repeated, so Father did not hear portions of the testimony. As these difficulties continued, the court generally asked witnesses to speak up prospectively. The court had testimony repeated once.

**¶10**        The court granted Mother's petition, finding she had proved abandonment by clear and convincing evidence and that termination was in B.K.'s best interests by the preponderance of the evidence. Father timely appealed. We have jurisdiction. Ariz. Const. art. 6, §§ 9, 15; A.R.S. §§ 12-2101(A)(1), -120.21(A)(1), and 8-235(A).

## DISCUSSION

**The Superior Court Abused Its Discretion by Denying Father's Motion to Continue the Trial For Two Weeks.**

**¶11**        We review appeals from denials of motions to continue for abuse of discretion, which here means Father must demonstrate he suffered prejudice sufficient to establish reversible error. *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 50 ¶ 18 (App. 2013).

      **A.**        **Mother's Omission to File an Answering Brief Operates as a Confession of Error as to the Procedural Issue of Granting a Two-Week Extension of Time For the Termination Hearing.**

**¶12** Mother did not file an answering brief. We treat her failure to do so as confession of error in this procedural issue. Our supreme court has held in cases with debatable issues, "a failure to file an answering brief is equivalent to a confession of error by appellee." *Navarro v. State*, 32 Ariz. 119, 120 (1927); *see also Tiller v. Tiller*, 98 Ariz. 156, 157 (1965) (reiterating that our Supreme Court will "assume that failure to file an answering brief is a confession of reversible error on the part of appellee."). At a minimum, it is fairly debatable whether the superior court abused its discretion in refusing to continue a hearing for two weeks when it would permit one parent to attend a hearing at which his constitutional right to parent was at issue. As such, failing to file an answering brief would ordinarily be a confession of error.

**¶13** We generally avoid treating the lack of a response as a confession of error to avoid having waivers affect the best interest of children. *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966) (stating that an application of implied confession of error should not be mandatory in cases involving minor children). *Hoffman* nonetheless leaves that determination to our discretion. *See Pima County Juvenile Action, No. J-65812-1*, 144 Ariz. 428, 429 (App. 1985). And our supreme court has cited *Hoffman* approvingly for the proposition that we should not apply procedural rules to effect defaults of parental rights where that could have an adverse effect on children. *Hays v. Gama*, 205 Ariz. 99, 102-03 ¶ 18 (2003).

**¶14** Given that prologue, there are two reasons we exercise our discretion to treat the failure to file an answering brief as a waiver. First, the issue here is purely procedural – whether to allow Father to participate in trial in person by continuing it for two or more weeks, or not to do so. The superior court's order denying Father's motion to continue reasoned it was "untimely and not in the interests of justice" but did not make the determination that the delay impacted B.K.'s best interests. Moreover, the record does not establish Father's motion for continuance affected B.K.'s best interests. Neither Mother nor the court illustrated how a two-week continuance impacted B.K.'s best interests, and Mother had previously moved toward seeking termination, but then waited another three years before proceeding in this matter. While *Gama* reminds us not to let procedural defaults interfere with a court's consideration of best interests, our procedural ruling here has no such effect. Mother's choice not to file a brief does not affect the merits issues concerning *Calvin B.*, which we do not reach, and does not impact the court's evaluation of the merits of Mother's termination petition on remand.

¶15          Second, by refusing to wait a brief period necessary to allow Father's full participation in his severance trial, the court failed to give proper weight to the fundamental nature of his constitutional right to parent and the centrality of oral testimony to this hearing. *Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 435 ¶ 40 (App. 2021) (explaining that in considering how to hold hearing during pandemic, court should consider, among other factors, "the fundamental right to parent . . . and the extent to which the court will be relying on testimony or instead on documentary evidence").

### B.      Father Was Prejudiced By the Remote Participation.

¶16          Father's remote participation prejudiced him, providing a second reason to reverse.  All other parties and attorneys attended this termination hearing in person.  But not Father.  Remote participation can be prejudicial in termination hearings.  Generally, in-person testimony is preferred because "it ensures the reliability of the evidence by allowing the trier of fact to observe the demeanor, nervousness, expressions, and other body language of the witness." *Tracy D.*, 252 Ariz. at 434 ¶ 35.  Remote testimony is less effective and reliable, and can impact assessments of credibility.  This is especially true here, where the matter was decided based on oral testimony.  Moreover, being consigned to remote participation prevents a litigant like Father from facing Mother, conferring in real-time with his counsel, and meaningfully confronting or cross-examining her adverse testimony. *State v. Moore*, 203 Ariz. 515, 518 ¶ 11 (App. 2002) ("Telephonic testimony seriously impinges on a defendant's ability to 'confront and cross-examine his accusers face-to-face'" and with telephonic testimony one cannot "'observe the demeanor, nervousness, expressions, and other body language of the witness.'").

¶17          Technological difficulties, as Father experienced here, put him at a disadvantage the record shows was not cured. *Compare Josiah E. v. Dep't of Child Safety*, No. 1 CA-JV 20-0400, 2022 WL 401535, *5 ¶ 25 (Ariz. App. Feb. 10, 2022) (mem. decision) (finding parent not prejudiced when court vacated and rescheduled day of proceedings in termination hearing given technological issues "that could not be readily remedied").  As noted above, Father experienced difficulty hearing testimony throughout the proceeding, and while the court asked witnesses to speak louder, it almost never had testimony repeated.  As other jurisdictions have likewise recognized, technological limitations in termination proceedings can threaten basic fairness. *See In re Baby K.*, 722 A.2d 470, 474 (N.H. 1998) (holding parent was denied "a fair opportunity to participate" in a termination proceeding after they experienced repeated technical

difficulties); *Orville v. Div. of Fam. Servs.*, 759 A.2d 595 (Del. 2000) (holding parent was denied a fair opportunity to participate in a termination proceeding where prison disconnected their call, holding court "should have continued the proceeding" until parent could join entire hearing). When granting Father two more weeks would have avoided any issue, and denying them resulted in a trial in which he was functionally watching from afar with an unreliable feed and impaired participation, there was both an abuse of discretion and prejudice.

## CONCLUSION

**¶18**       For these reasons, we vacate the order terminating Father's parental rights, and remand for further proceedings consistent with this decision.  Because we reverse and remand for a new trial, we do not reach Father's second issue regarding *Calvin B.*



AMY M. WOOD • Clerk of the Court
FILED:    AA